| | | |
|---|---|---|
| **Mary Doe as next friend of John Doe 1,** | ) | |
| **John Doe 2, and John and Jane Does 1-100,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 2:22-cv-02657** |
| | ) | |
| **v.** | ) | **JURY DEMANDED** |
| | ) | |
| **Varsity brands, LLC, Varsity Spirit, LLC,** | ) | |
| **Varsity Brands Holding Company, Inc.,** | ) | |
| **U.S. All Star Federation, USA Federation** | ) | |
| **Of Sport Cheering d/b/a USA Cheer,** | ) | |
| **Charlesbank Capital Partners, LP,** | ) | |
| **Bain Capital, LP, Jeff Webb, individually,** | ) | |
| **Gym & Studio Ops, LLC, d/b/a Premier** | ) | |
| **Athletics, LLC, Susan Traylor,** | ) | |
| **and Dominick Frizzell,** | ) | |
| | ) | |
| **Defendants.** | | |

## DEFENDANTS GYM & STUDIO OPS, LLC AND SUSAN TRAYLOR'S MOTION AND SUPPORTING MEMORANDUM TO DISMISS

Defendants Gym & Studio Ops, LLC ("GSO") and Susan Traylor ("Traylor")(collectively, "Defendants"), by and through their counsel of record, Glassman, Wyatt, Tuttle & Cox, P.C., pursuant to Rules 8(a)(2), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, and the applicable substantive laws of this jurisdiction, respectfully submit the following Motion and Supporting Memorandum of Law to Dismiss Plaintiffs' Amended Complaint in this action in its entirety, and state as follows:

### RELEVANT BACKGROUND

This action arises from the alleged sexual solicitation, exploitation and abuse of Plaintiffs John Doe 1 and John Doe 2 by former Premier Athletics and/or GSO employee and University of

Tennessee cheerleader Dominick Frizzell ("Frizzell").[1] Arising therefrom, Plaintiffs have made claims of: (I) Violation of the Protecting Young Victims from Sexual Abuse Act, 18 U.S.C. § 2255; (II) Civil Conspiracy in violation of the RICO Act, 18 U.S.C. §§ 1962(c) and 1962(d); (III) Gross Negligence; (IV) Negligent Supervision; (V) Respondeat Superior; (VI) Assault/Battery; (VII) Breach of Contract; (VII) Unjust Enrichment; (IX) Fraud; (X) Negligent Security; and (XI) Intentional and/or Negligent Infliction of Emotional Distress. In support of these claims, and for purposes of this Motion only, Defendants incorporate by reference all the following "facts" alleged by the Plaintiffs in their Amended Complaint:

Specifically, and as it relates directly to the claims raised against these Defendants, Plaintiffs contend that since at least 2016, Frizzell was "a dominant figure in the cheer world," and that "Premier Athletics"/ GSO used his "cheerlebrity status" both while he was an athlete, and later as a coach, on social media and other platforms to attract young athletes like Plaintiffs John Doe 1 and 2, to the gym. (ECF 7, ¶ ¶ 167-177.) Plaintiffs contend that in or around 2019, while Frizzell was simply an athlete competing at the gym, he "engaged in non-consensual sexual conduct with at least one [unidentified, *non-party*] minor athlete in [the gym], and this interaction

---

[1] Purely as a technical matter, while not the primary focus of this Motion, but so as not to waive any argument or defense related thereto, these Defendants note that the instant litigation purports to be brought, *inter alia*, on behalf of unidentified "plaintiffs" "John and Jane Does 1-100." (*See, generally,* ECF 7.). Additionally, throughout their Amended Complaint, Plaintiffs purport to reference alleged injuries, harms, and/or other "incidents" involving unidentified, *non-party* persons ostensibly in support of the claims raised therein. (*See, e.g., id.*) To the extent any "claim" in Plaintiffs' Amended Complaint rests, in whole or in part, on purported "factual" allegations related to such hypothetical, *potential* future plaintiffs, those fail to meet the basic pleading requirements of Rule 8, 9 and 12(b)(6) of the Federal Rules of Civil Procedure and should be dismissed in their entirety. Plaintiffs' Amended Complaint in this regard fails to establish basic issues supporting the standing of such hypothetical "plaintiffs," that any actual or "live" controversy exists between any of the parties, or even that this Court has appropriate jurisdiction over such plaintiffs or their alleged claims, if any. *Id.*; *see also* U.S. Const. Art. III; *ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 688 (6th Cir. 2007)("The case or controversy requirement in Article III of the Constitution determines the power of the federal courts to entertain a suit."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351)("irreducible constitutional minimum of standing contains three elements,: namely (1) "the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized," and "(b) 'actual or imminent,' not 'conjectural' or 'hypothetical,'"; (2) that there "must be a causal connection between the injury and the conduct complained of," and (3) "it must be 'likely,' as opposed to merely 'speculative' that the injury will be 'redressed by a favorable decision.'")(internal citations and quotations omitted.)..

was pervasive and ongoing." (*Id.* at ¶ 182.) Later, "in or around 2020, [Premier Athletics] made [Frizzell] a coach, providing private lessons and trainings, and leading camps." (*Id.* at ¶ 183.)[2]

**Plaintiff John Doe 1's Claims**

The purported abuse of John Doe 1 did not begin until "January, 2022," when Plaintiffs claim Frizzell "began sending sexually explicit messages and photographs of himself to Plaintiff John Doe 1, including photographs of [Frizzell's] penis, and videos of [himself] masturbating." (*Id.* at ¶ 224) These messages further "requested that Plaintiff John Doe 1" send "similar" sexual content back to Frizzell. (*Id.* at ¶ 225.) The following month or so later, around "February, 2022," Plaintiff John Doe allegedly communicated with another, unidentified, non-party, "underage male" athlete with the gym who Frizzell had also allegedly been contacting, also "asking for sexually explicit photographs and content," sending "sexually solicitous text messages, photos, and videos," and otherwise "behaving in a predatory manner" toward this third party. (*Id.* at ¶¶ 226-229.)

Subsequently, on April 16, 2022, Plaintiff John Doe 1 claims that Frizzell asked to meet him and requested "that Plaintiff smoke marijuana before" the meeting. (*Id.* at ¶ 229.) Plaintiff purportedly did so, making himself sick in the process, before meeting up with an "intoxicated" Frizzell at an unidentified location, where Frizzell "held" Plaintiff and "stroked his back and neck." (*Id.* at ¶¶ 229-230.) The pair purportedly met up again "[l]ess than a month later" at Frizzell's request, again at an unidentified location, where "Frizzell was intoxicated to the point that he became ill." (*Id.* at ¶ 231). The pair met up one final time, on what was apparently an overnight

---

[2] Plaintiffs' Amended Complaint offers the contradictory assertion that Frizzell was not actually employed as a coach by "Premier Athletics"/GSO until "in or around April, 2022," roughly *two (2) years later*, when he contemporaneously began cheering for the University of Tennessee. (ECF 7, ¶ 178-179.)

visit during the time period of May 27-28, 2022, at Frizzell's request and again at an unidentified location, when they "engaged in oral sex." (*Id.* at ¶ 232.)

Plaintiff claims he "changed to a new gym" without incident or complaint "shortly thereafter," in part due to his "interaction" with Frizzell - and did so without ever reporting the purported incidents/contacts to these Defendants. (*Id.* at ¶ 233-234.) Instead, another unidentified, non-party "fellow athlete" allegedly "made a report to [Traylor] about [Frizzell's] criminal and sexually inappropriate behavior with minor athletes at" the gym; however, notably, there is no allegation that either Traylor or GSO was ever informed of or had any knowledge of these "interactions" between Plaintiff John Doe 1 and Frizzell at any point at or near the time any of them purportedly occurred. (*See, generally,* ECF 7, ¶¶ 224-256.) In fact, according to Plaintiff's own version of events, it was not until "June of 2022," when the first report of these allegations were made to Traylor (*see id* at ¶ 234) and not until September 15-16, 2022, *months after* the alleged abuse, that either Plaintiff John Doe I and/or Plaintiff Mary Doe first made a report about "the *potential* abuse," not to these Defendants, but directly to law enforcement and Defendant USASF." (*Id.* at ¶ 256.)

Moreover, as alleged by Plaintiff John Doe I, upon receiving the alleged report concerning Frizzell's conduct, GSO investigated the claims and reported it to Defendant USASF; Defendant USASF also subsequently conducted its own investigation into the allegations. (*See* ECF 7, ¶¶ 234-238, 244, 249.) However, Plaintiff claims that no one contacted him or his mother, Plaintiff Mary Doe concerning the allegations, but that Frizzell "bragged" Traylor "wasn't going to fire [him]" to Plaintiff John Doe I, sent John Doe I "numerous messages threatening the [unidentified, non-party] minor athlete who made the initial report" and attempted "to influence how Plaintiff

John Doe responded to questions and inquiries about his interaction with" Frizzell. (*Id.* at ¶¶ 238-240, 245-246.)

Plaintiff claims that these Defendants "bungled" their internal investigation by "determining that insufficient proof existed to hold Defendant Frizzell accountable" based "at least in part" on the fact that Plaintiff John Doe 1 was no longer with the gym and by reportedly allowing Frizzell to continue to use the premises of the gym, both as a coach and an athlete, allegedly interacting "regularly" with "underage athletes" for "over a month after [Frizzell] received the letter from Defendant USASF notifying him of the reports of misconduct" and after Defendants had been provided "courtesy copies" of the USASF letter. (*Id.* at ¶¶ 249-253.)

## **Plaintiff John Doe 2**

Plaintiff John Doe 2 claims he first met Frizzell in 2018, "when Plaintiff John Doe 2 was fourteen years old, and Defendant Frizzell was nineteen." (ECF 7, ¶ 262.) Plaintiff claims they were both athletes at the time competing at Premier Athletics' gyms. (*Id.* at ¶ 264.) According to Plaintiff John Doe 2, during this time period, Frizzell "initiated contact" with him "via [S]napchat, sending nude photographs of himself … and asking Plaintiff John Doe 2 to reciprocate." (*Id.* at 265.) No claim is made that Plaintiff John Doe 2 reported such alleged communications at or near the time they purportedly occurred. (*Id.* at ¶¶ 262-265.)

Roughly two (2) years later, when Plaintiff John Doe 2 "was approximately sixteen years old," Frizzell "finally convinced [him] to meet up, and they began to engage in oral sex and other sexual conduct." (*Id.* at ¶ 266.) Allegedly, this "sexual interaction continued for years," during which time, according to Plaintiff, Frizzell was still an athlete – not an employee or coach – with Premier Athletics. (*Id.* at ¶ 267.) These "interactions" of "oral sex and other sexual activities" allegedly took place "on dozens of occasions, sometimes at [unidentified] relative's houses, or

apartments of mutual friends," often enough that Plaintiff asserts that he believes "*other athletes*" knew of the "ongoing sexual relationship" between the two. (*Id.* at ¶¶ 267-270.) During this time period, Frizzell was ultimately hired as a coach by Premier Athletics. (*Id.* at ¶ 271.) At no point does Plaintiff claim that he ever reported these "interactions" to any employee, administrator, coach, or other adult at Premier Athletics/GSO, much less to any other named Defendant, any law enforcement agency, etc. (*See generally*, ¶¶ 262-272.)

## Common Missing Allegations

Despite its length and repeated references to hearsay allegations outside those actually relevant or material to their stated claims, Plaintiffs' Amended Complaint is as notable for what it does *not* contain as for what it *does*. For purposes of this Motion, a few commonalities should be noted as they relate to the Plaintiffs' purported factual allegations purportedly giving rise to the claims at issue. More specifically, Plaintiffs' Amended Complaint is devoid of *any* factual claims to support any of the following points as it specifically relates to their alleged claims concerning these Defendants, including but not limited to any factual allegation(s):

- That these Defendants had *any* knowledge whatsoever of any alleged or purported misconduct by Frizzell *prior to* the "interactions" allegedly giving rise to Plaintiffs' claims;

- That *either* Plaintiff – or even anyone actually acting on their behalf, whether directly or indirectly – actually ever made any report, claim, or allegation to these Defendants *at any time* concerning any purported misconduct by Frizzell;

- That *any* of these purported "interactions" with *either* Plaintiff ever occurred on gym premises, through the use of any gym property or facilities, during any gym sponsored events, while either Plaintiff was under the active supervision of any of the Defendants employees, agents or representatives while such persons were acting within the course and scope of their employment, or even that any of the interactions purportedly occurred during Frizzell's active duties with the Defendants as part of his employment;

- That in any of their purported "interactions" with Frizzell at any point or time, *either* Plaintiff was ever "transported across state lines," had any "illegal and

obscene digital materials" of themselves created, or was ever provided any alcohol or drugs by these Defendants (or indeed, any of the named Defendants to this litigation);

- That either Defendant made any specific fraudulent misrepresentation whatsoever at any relevant point or time; and/or

- That either Defendant actually failed to properly investigate any claim of misconduct actually made to them, or that either Defendant failed to properly vet coaches like Frizzell prior to hiring them as an employee; failed to report complaints actually made to them concerning any alleged inappropriate conduct against any minor, including but not limited to Plaintiffs John Doe 1 and 2; and/or that either Defendant ever possessed, sold, distributed, reproduced, transmitted or transported any improper or inappropriate images of the Plaintiffs across the mails and wires, etc.

## LAW AND ARGUMENT

### I.    LEGAL STANDARD OF REVIEW

Very simply, Plaintiffs have presented this Court with what can best be described as a "shotgun complaint," copying and pasting the same basic, unsupported allegations of legal opinion and theory they have used against many of these same Defendants in multiple distinct lawsuits now without making any reasonably objective attempt to separate out the factual basis for their numerous, disparate claims. *See, e.g., Gilkey v. Wells Fargo Bank, N.A.,* 2013 WL 4432163 at *5-9 (W.D. Tenn. Aug. 16, 2013)(dismissing a "shotgun complaint" which consisted of general allegations without differentiating between defendants pursuant to Rule 12(b)(6) and noting that such complaints "wreak havoc on the judicial system")(*citing Jerry W. Cobb v. Regions Bank,* 2010 WL 2010780 at *3 (W.D Tenn. May 19, 2010).

In reviewing a Rule 12(b)(6) motion to dismiss, a federal district court must determine if the pleading contains sufficient factual matter, accepted as true, that states a claim for relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (1949) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)); *see also* Fed. R. Civ. P. 8, 12.  When considering a motion

to dismiss for failure to state a claim, courts must engage in a two-step analysis. *See Powell v. Denton*, 2010 WL 1491550, at *2 (E.D. Tenn. Apr. 12, 2010). The first step is to identify any conclusory allegations in the complaint. *See Iqbal*, 556 U.S. at 678. While "the court must accept all well-pleaded factual allegations of a complaint as true for purposes of a motion to dismiss, the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Powell* at *2 (*quoting Twombly* at 555). The second step is to "determine whether the complaint pleads 'a claim to relief that is plausible on its face.'" *Powell* at *2 (*quoting Iqbal* at 678). Only if a complaint sets forth a plausible claim for relief will it prevail over a motion to dismiss. *See Iqbal* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. To be considered plausible, a claim must be more than merely conceivable and the "factual allegations must be enough to raise a right to relief above the speculative level ..." *Twombly* at 555. At the end of the day, a plaintiff attempting to survive a Motion to Dismiss under this Rule has to do more than rattle off bare assertions of legal conclusions or argument and set forth more than a mere formulaic recitation of the elements of a cause of action. *See, e.g., Bovee v. Coopers & Lybrand, C.P.A.,* 272 F.3d 356, 361 (6th Cir. 2001); *Twombly*, 550 U.S. at 555.

## II. PLAINTIFFS' AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY PURSUANT TO RULE 12 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

### A. Defendants Request to Strike

Federal Rule of Civil Procedure 12(f) permits this Court to strike, either upon the motion of a party or on its own initiative, "any redundant, immaterial, impertinent, or scandalous matter" in a pleading. *See* Fed. R. Civ. P. 12(f); Wright & Miller, Fed. Prac. & Proc. Civ. 3d § 1382. Defendants acknowledge that motions to strike under this rule are generally disfavored, and note

that the resolution of such motions are reserved to the Court's sound discretion. *See, e.g., Ostrom v. U.S.,* 2010 WL 624316 at *1-2 (W.D. Tenn. Feb. 17, 2010). As noted previously by this Court, "[m]aterial is said to be impertinent, for purposes of Rule 12(f), if it consists of statements that do not pertain, and are not necessary, to the issues in question. There is considerable overlap between the concepts of 'impertinent' and 'immaterial' matter." *Id.* at *1. Where the material at issue "has no possible relation to the controversy and may cause significant prejudice to one of the parties," motions to strike are appropriate. *Id.*

In this case, Plaintiffs' Amended Complaint contains a host of such immaterial and impertinent references throughout its pages, including, simply by way of example: unsupported and unsubstantiated statements related to "the competitive cheer world," and the idea that it is "worth billions of dollars annually) (ECF 7 ¶¶ 32-34); claims related to the alleged "stay-to-play" system (*Id.* at ¶¶ 57-58); purported efforts by "[t]he system" to "disassociate the athletes from their families" and "create an unending pipeline of new athletes, coaches, and gym owners" (ECF ¶¶ 67-68); the purported "$2.5 billion" purchase of "the Varsity Defendants" by Bain Capital in 2018 (*Id.* at ¶¶ 104-106); repeated references of hearsay allegations made against wholly unrelated, non-parties to this litigation (*Id.* at ¶¶ 108-113, 116-118, 122-127, 136, 138, 142-143, 155, 156, 161-163. ); and claims of unspecified, unrelated sponsored "events" purportedly providing unrelated, non-party "child-athletes with access to drugs and alcohol with minimal parental or adult supervision," (*Id.* at ¶¶ 131-132) among others. None of these allegations bear any relevance or materiality to any of the *actual* claims of purported abuse Plaintiffs claim are really at issue here, and their only purpose is to harass, embarrass, and intimidate these Defendants, causing undue prejudice to Defendant GSO and Traylor who have not been even alleged to have any connection to any of these issues whatsoever. Similarly, Plaintiffs' Amended Complaint contains "claims" of

joint and several liability in this case against all Defendants. (ECF 7, ¶ 273). The doctrine of joint and several liability has been abolished in Tennessee since at least 1992, in the case of *McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn. 1992). This Court has previously held that striking such a claim from a complaint is appropriate under Rule 12(f) as being immaterial and impertinent under the Rule, as such a claim "may fortuitously impose a degree of liability on a particular Defendant that is out of all proportion to fault." *Ostrom*, 2010 WL 624316 at *1.

Defendants accordingly move to strike each of the impertinent and immaterial allegations, including but not limited to the "claim" of Joint and Several Liability, from Plaintiffs' Amended Complaint in their entirety pursuant to Rule 12(f).

### B.    Count I: Violation of the Protecting Young Victims from Sexual Abuse Act, 18 U.S.C. § 2255 Should be Dismissed for Failure to State a Claim

Plaintiffs have attempted to claim that all Defendants are liable for purported violations of the Protecting Young Victims from Sexual Abuse Act, 18 U.S.C. § 2255. (ECF 7 ¶¶ 274-282.) Section 2255 provides that any person who, while a minor, was a victim of a violation of certain predicate statutes and who suffers personal injury as a result of such a violation may bring a private cause of action to recover damages.  18 U.S.C. § 2255. Plaintiffs have attempted to "shotgun" this claim by asserting it against "all defendants" and merely "realleging" the entirety of their preceding complaint, but nowhere in the entirety of their Amended Complaint do they set forth any actual, specific factual allegation to support any such claim against either of these Defendants. Simply put, Plaintiffs cannot and do not state a claim for a violation(s) of Section 2255 against GSO or Traylor because neither violated any of the predicate statutes set forth in that Section, namely, any alleged violation(s) under 1589, 1590, 1591, 2241(c) 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423. At best, Plaintiffs generally "check the boxes" by regurgitating the list of sections and generically asserting that "Defendants" have somehow violated all of these

predicate statutes, but as discussed in greater detail above, when it comes to the specific factual allegations actually made applicable to these Defendants in Plaintiffs' Amended Complaint, there are simply no such factual allegations – as opposed to mere legal opinion and conclusions – which can reasonably support any legally cognizable claim.

Additionally, Section 2255 does not provide for vicarious liability, so to the extent Plaintiffs attempt to suggest that the acts or omission of some other Defendant can be imputed to these Defendants to support a claim under Section 2255, that argument too fails. *See, e.g., Doe v. City of Gauley Bridge*, No. 2:21-CV-00491, 2022 WL 3587827, at *13 (S.D.W. Va. Aug. 22, 2022) ("Thus, based on Congress's silence and § 2255's legislative history, the Court finds that that Congress did not intend to permit a theory of vicarious liability under § 2255."). Because Plaintiffs have not sufficiently alleged that GSO or Traylor violated any of the predicate statutes and because no vicarious liability can attach under § 2255, Plaintiffs' claim against these Defendants pursuant to § 2255 should be dismissed with prejudice.

C. **Count II: Civil Conspiracy in Violation of the RICO Act, 18 U.S.C. 1962(b) and (d) Should be Dismissed for Failure to State a Claim**

Plaintiffs allege that Premier Athletics and Traylor conspired with the remaining Defendants to violate the RICO Act. Plaintiffs' RICO conspiracy claim must fail because Plaintiffs have failed to plead sufficient facts showing Premier Athletics or Traylor engaged in a conspiracy to engage in a pattern of racketeering activity to acquire or maintain interest in any enterprise, the activities of which affect interstate commerce. To state a claim for conspiracy in violation of RICO, Plaintiffs must plead factual allegations showing Defendants acted as an enterprise and engaged, or conspired to engage, in a pattern of racketeering activity. 18 U.S.C. §§ 1961 and 1962. Even more to the point, a civil plaintiff alleging a RICO claim must demonstrate that he/she possesses standing to bring such a suit. According to the Supreme Court, "the plaintiff

only has standing if … he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Fleischhauer v. Feltner*, 879 F.2d 1290, 1299 (6th Cir. 1989); see *also* 18 U.S.C § 1964(c).

A simple review of the factual allegations in this case demonstrate that Plaintiffs have not set forth any facts  - even if taken as true – to support the notion that any of the Plaintiffs have been "injured in his business or property." Plaintiffs purported personal injuries arising from their alleged abuse by Frizzell cannot and do not constitute an injury to "business or property" recoverable under RICO. *See, e.g., Gucwa v. Lawley*, 731 Fed. Appx. 408, 412 (6th Cir. 2018)("Even though personal injuries may lead to monetary damages, such personal injuries and their associated pecuniary losses – including medical expenses – do not confer relief" under RICO); *Fleischhauer*, 879 F.2d at 130("Recovery for physical injury or mental suffering is not allowed under civil RICO because it is not an injury to business or property"). Moreover, as explained by the Sixth Circuit, to survive a motion to dismiss, a plaintiff attempting to state a RICO claim must not only show an injury to his business or property; he must also set forth sufficient facts to show that the alleged injury "was proximately caused" by the purported RICO violation itself. *See, e.g. Sharp v. Ingham County*, 23 Fed.Appx 496, 499 (6th Cir. 2001)(*citing Holmes v. Securities Investor Prot. Corp.,* 503 U.S. 258, 258-59, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)).

At best, Plaintiffs have alleged the common scheme of the enterprise was to "defraud these athletes and their families out of money and property with their artifice and deceit regarding the safety of their programs" and that such scheme was accomplished through racketeering activity. (ECF 7 at ¶ 301).  Specifically, in their RICO count, Plaintiffs allege the common purpose of the alleged enterprise was "recklessly, intentionally, and willfully endangering the Plaintiffs as minor athletes by exposing them to illegal sexual abuse, imagery, and exploitation while assuring the

athletes and their parents they were particularly safe in exchange for money." (*Id.* at ¶ 291). In short, Plaintiffs' RICO claims arise from their personal injury, namely, the alleged abuse of Frizzell – not from any actual "injury" to his business or property, and accordingly fail to state any claim upon which relief can be granted.

Plaintiffs also allege that Defendants generally have engaged in mail fraud in violation of Section 1341 and wire fraud in violation of Section 1343. (ECF 7, ¶ 288.) However, the alleged examples of wire fraud and mail fraud all relate to alleged statements made by USASF (*Id.* at ¶ 288), and Plaintiffs have alleged no facts showing that GSO or Traylor made any such statements themselves or even that they knew the alleged statements by USASF constituted mail or wire fraud and conspired with USASF to make them.[3] Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted against GSO and Traylor.

Similarly, in order to be an enterprise under RICO, the "distinctness" requirement must be met, meaning the RICO defendant must be distinct from the "enterprise." *See, e.g., Begala v. PNC Bank, Ohio, Nat. Ass'n.*, 214 F.3d 776, 780-81 (6th Cir. 2000). Typically, business entities that are so closely integrated as to be alter egos of one another would fail the distinctness requirement between the RICO defendant and the enterprise that defendant conducts, unless the corporate defendants are functionally separate from the RICO enterprise, such that they perform different roles within the enterprise or use their separate legal incorporation to facilitate racketeering

---

[3] Additionally, to the extent Plaintiffs attempt to set forth *any* purported claim of fraud against these Defendants, including but not limited to those assertions contained within Count IX of Plaintiffs' Amended Complaint, Defendants submit that each and every such alleged claim fails to meet the pleading requirements of Rule 9 of the Federal Rules of Civil Procedure, which requires such allegations to be made with particularity. *See* ECF 7, ¶¶ 363-373; *but see* Fed. R. Civ. P. 9. At a minimum, that would require that Plaintiffs' Amended Complaint set forth, in detail, facts showing "(1) an intentional misrepresentation of an existing fact; (2) knowledge of the representation's falsity; and (3) injury caused by reasonable reliance on the misrepresentation." *See, e.g., Gilkey v. Wells Fargo Bank, N.A.,* 2013 WL 4432163 at *7 (W.D. Tenn. Aug. 16, 2013)(*citing Mid-South Indus. Inc. v. Martin Mach. & Tool, Inc.*, 342 S.W.3d 19, 28 (Tenn. Ct. App. 2010)). Plaintiffs fail to set forth any set of facts, even when taken as true, that either of these Defendants committed any manner of fraud or misrepresentation whatsoever.

activity.  *Id.*  Plaintiffs in this case expressly allege that "the athletes that pay to enter the competition cheer world did not know or did not distinguish between the corporate affiliations of different individuals.  These organizations all affirmatively and collectively represent themselves as one All-Star family, rather than separate parents and subsidiaries."  (ECF 7 ¶ 208).  Because Plaintiffs have not satisfied the distinctness requirement, their RICO claim again must fail.

### D.    Counts III: Gross Negligence and IV: Negligent Supervision Should Be Dismissed for Failure to State a Claim

Beyond generically lumping all Defendants together via the same "shotgun" method addressed above, Plaintiffs have failed to set forth any factual allegation, which even taken as true for purposes of this motion in the light most favorable to the Plaintiffs, set forth a claim that either of these Defendants engaged in any act or omission that could constitute "negligent supervision," much less "gross negligence." (*See* ECF 7 ¶¶ 311-337.) To establish a claim for negligent supervision, a plaintiff must establish, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job. *See, e.g., Fletcher v. CFRA*, LLC, 2017 WL 929413, at *12 (Tenn. Ct. App. Mar. 8, 2017).  For "gross negligence" claims under Tennessee law, Plaintiffs not only have to set forth factual allegations supporting each of the basic elements of a general negligence claim, but they must also establish "that the act at issue was done with utter unconcern for the safety of others, or with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law." *Waterhouse v. Tennessee Valley* Authority, 475 F.Supp.3d 817, 825 (E.D. Tenn. 2020)(*quoting Menuskin v. Williams*, 145 F.3d 755, 766 (6th Cir. 1998)).

 As set out in the specific factual allegations actually given by the Plaintiffs above, here Plaintiffs do not allege that GSO actually knew of Frizzell's alleged unfitness for the job prior to John Doe 1 and John Doe 2's alleged "interactions" with him, nor do they make any fact-based

claims that that GSO, armed with such knowledge, somehow failed to protect them. Rather, Plaintiffs *admit* that GSO gained knowledge of Frizzell's alleged unlawful conduct only *after* it Frizzell engaged with the Plaintiffs outside the course and scope of his employment with GSO and only *after* unidentified third parties reported such alleged conduct to these Defendants. Likewise, Plaintiffs themselves plead that following their receipt of such reports, these Defendants undertook investigations of the claims in both incidents thereafter. Moreover, there are <u>no</u> allegations that Frizzell engaged in any unlawful conduct after GSO and/or Traylor were allegedly made aware of his behavior. Again, Plaintiffs simply have failed to set forth any set of facts which can reasonably support either of these claims, and accordingly, they too should be dismissed with prejudice.

E. **Count V: Respondeat Superior Should Be Dismissed for Failure to State a Claim**

Under Tennessee law, *respondeat superior* is not a standalone claim, but rather a theory or doctrine of recovery for an underlying tort. For an employer to be held liable under the doctrine of respondeat superior, the plaintiff must prove that the employee was acting within the course and scope of his employment when the injury occurred. *Davis v. Modine Mfg. Co*., 979 S.W.2d 602, 607 (Tenn.Ct.App.1998) (citations omitted). The question of whether the employee was acting within the course and scope of his employment is "ordinarily one of fact for the determination of the jury, *except where the departure from the [employer's] business is of marked and decided character.*" *Doe v. Cath. Bishop for Diocese of Memphis*, 306 S.W.3d 712, 729 (Tenn. Ct. App. 2008). (emphasis in original). In this case, the question of whether Frizzell was acting within the course and scope of his employment falls within the above-stated exception because Plaintiffs allege that Frizzell sexually abused John Doe 1 and 2, and sexual abuse is undoubtedly a departure from Premier Athletics' business and is of marked and decided character.

Plaintiffs' theory of respondeat superior should be dismissed because Plaintiffs do not plead any facts sufficient to show that Frizzell was acting in the course and scope of his employment when he allegedly engaged in sexual conduct and sexually explicit conversations with John Doe 1 and 2. Plaintiffs' mere legal conclusion that he was is insufficient establish a claim. As set forth above, Plaintiffs do not allege Frizzell (for example) used a company provided phone to communicate with either John Doe 1 or 2. They do not allege that any of the alleged interactions occurred on the gym premises, or during Frizzell's working hours at the gym, in the presence of any other GSO employee, agent or representative, or any other fact that, if taken as true and in the light most favorable to them, would support the proposition that *any* of the alleged "interactions" occurred while Frizzell was actually working for these Defendants.

Moreover, Tennessee law recognizes a presumption that intentional torts committed by employees, such as sexual battery, typically occur outside the course and scope of employment, and therefore, respondeat superior liability does not attach. *See Werner v. Young*, No. 1:20-CV-252, 2021 WL 397392, at *5 (E.D. Tenn. Feb. 4, 2021);*see also, Jackson v. Burrell,* 2019 WL 237347, at *4–*5 (Tenn. Ct. App. Jan. 16, 2019) ("[W]e hold that it strains credulity to view a massage therapist's act of sexual assault to be within the scope of employment."), *rev'd on other grounds* by 602 S.W.3d 340 (Tenn. 2020); *Doe v. Cath. Bishop for Diocese of Memphis*, 306 S.W.3d 712, 729 (Tenn. Ct. App. 2008) (recognizing that other jurisdictions have found sexual abuse by clergy members to be outside the scope and course of employment because sexual batteries are generally deemed to be outside the scope of employment unless the tortfeasor used his employment to commit the tort). Because the sexual abuse which Plaintiffs allege Frizzell committed is markedly and decidedly <u>outside</u> the course and scope of his employment with GSO, Plaintiffs' claim for respondeat superior should also be dismissed.

**F.      Count VIII: Unjust Enrichment should be dismissed for failure to state a claim**

At their core, Plaintiffs' "claim" of unjust enrichment stem from their purported personal injury claims arising from their "interactions" with Frizzell. However, under Tennessee law, "[u]njust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court amy impose a contractual obligation where one does not exist." *Whitehaven Cmty Baptist Church v. Holloway,* 973 S.W.2d 592, 596 (Tenn. 1998). It is based on the theory that "a party who receives a benefit that he or she desires, under circumstances rendering retention of the benefit without providing compensation inequitable, must compensate the provider of the benefit." *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). To prove such a claim, a plaintiff must show: "(1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.' "*Id.* at 525 (*quoting Paschall's Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 154-55 (Tenn. 1966)). "Implicit in the unjust enrichment elements is that the plaintiff has conferred a benefit upon the defendant for which he has not been compensated.*" Cole v. Caruso*, 2018 WL 1391625 at *5 (Tenn. Ct. App. Mar. 20, 2018)(*citing Freeman Indus.*, 172 S.W.3d at 525)).

Again, the actual facts alleged by the Plaintiffs simply fail to state a claim. Plaintiffs assert that they "conferred non-gratuitous benefits upon [all] Defendants including annual competition and membership fees, as well as continuous revenue toward uniforms, accessories, private training, and other monetary benefits." (ECF 7 ¶ 358.) Plaintiffs do not dispute they received the benefits of those alleged payments, nor do they allege any facts which, taken as true, would support the proposition that *these* specific Defendants have somehow been unjustly enriched as that term of art is used in Tennessee law. Therefore, this portion of Plaintiffs' Amended Complaint still fails to set forth any claim upon which relief can be granted and should be dismissed in its entirety.

**G. Count X: Negligent Security Should Be Dismissed for Failure to State a Claim**

With respect to a negligent security claim, courts in Tennessee have repeatedly held that a business owner has no duty to protect customers from assault perpetrated by an off-duty employee outside the business premises. *See, e.g., Fletcher v. CFRA*, LLC, 2017 WL 929413, at *12 (Tenn. Ct. App. Mar. 8, 2017*); Finger v. James Gang Amusements,* 2005 WL 756231, at *2 (Tenn. Ct. App. April 4, 2005). Again, as discussed herein, Plaintiffs' allege, at best, that their "interactions" with Frizzell occurred off-premises, at locations such as houses and apartments of friends and family members, and there are no alleged facts showing that Frizzell was engaged in any duties for Premier Athletics at the time such alleged conduct occurred. Accordingly, Plaintiffs cannot state a claim for negligent security against GSO. *See, Finger* at *2 (holding that employer could not be liable under negligent security for actions of employee who followed customer off premises and sexually abused her, as any duty employer had to protect customers did not extend to areas off premises outside employer's control); *Fletcher* at *11 (affirming summary judgment in defendant's favor on negligent security claim where employee finished shift, clocked out, left premises, then assaulted customer who had visited defendant's store earlier that day).

**H. Count XI: Intentional Infliction of Emotional Distress Should Be Dismissed for Failure to State a Claim**

A claim for intentional infliction of emotional distress requires a showing that "the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Davis v. Covenant Presbyterian Church*, 2014 WL 2895898, at *6 (Tenn. Ct. App. June 23, 2014). Tennessee has adopted the "high threshold" of the Restatement (Second) of Torts:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious **or even criminal**, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by

'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

*Davis*, at *6 (emphasis added).

Plaintiffs have once again attempted to "shotgun" generic, unsupported legal conclusions as the "basis" for this purported claim. (ECF 7, ¶¶ 381-386.) At best, if taken as true, Plaintiffs assert that Frizzell sexually assaulted, exploited, and/or abused them *outside* the course and scope of his employment with either GSO or Traylor. Plaintiffs themselves claim that these Defendants learned of the alleged misconduct only *after* it occurred, and that the Defendants both reported the alleged misconduct and conducted their own investigation. Even if Plaintiffs find fault in the investigation or actions taken by these Defendants after the allegations of abuse were reported, *no* factual allegation made by the Plaintiffs against these Defendants rise to the level required to set forth a claim of intentional infliction of emotional distress under Tennessee law. Likewise, neither GSO nor Traylor can be vicariously liable for any alleged conduct that might arguably rise to the level of outrageous that was allegedly committed by any other Defendant. There are no factual allegations showing that any such Defendant was acting in the course or scope of his employment with Premier Athletics when such alleged conduct occurred. *See, e.g., Lambert v. Cent. Transp., Inc.*, No. 3:07-00052, 2008 WL 11389189, at *13 (M.D. Tenn. Apr. 24, 2008) (finding plaintiff's allegations that employer did not properly train employees on sexual harassment, conducted "superficial investigation" of sexual harassment complaints, and did not properly protect plaintiff from sexual harassment not sufficient for IIED claim against employer). For these reasons, Plaintiffs' claim for intentional infliction of emotional distress should be dismissed.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, DEFENDANTS GSO and Traylor respectfully request that this Honorable Court GRANT the instant Motion to Dismiss and dismiss Plaintiffs' claims against them in their entirety and with prejudice. Defendants further request all additional relief to which they may otherwise be entitled, whether such relief sounds at law or in equity.

Respectfully Submitted By,
**GLASSMAN, WYATT, TUTTLE & COX, P.C.**

s/ Ronna D. Kinsella
**ROBERT A. COX, ESQ. (BPR# 14279)**
**RONNA D. KINSELLA, ESQ. (BPR #24549)**
26 N. Second Street
Memphis, Tennessee 38103
(901) 527-2133 – Telephone
(901) 521-0940 – Facsimile
rcox@gwtclaw.com
rkinsella@gwtclaw.com
**Attorneys for Defendants GSO & Traylor**
**Our File No.: 22-395**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed through the Court's CM/ECF system, which electronically served the following:

James Michael Clemons
414 Union Street, Suite 1900
Nashville, TN 37219
(615) 823-1201 – Telephone
(615) 823-1194 – Facsimile
Email: michael@clemlawfirm.com

Amy E. Willbanks
Bakari T. Sellers
Benevento Alexandra
Jessica Fickling
Mario Pacella
6923 N. Trenholm Rd.
Columbia, SC 29206

(803) 252-4800 – Telephone
(803) 252-4801 – Facsimile
Email: awillbanks@stromlaw.com
bsellers@stromlaw.com
abenevento@stromlaw.com
jfickling@stromlaw.com
mpacella@stromlaw.com

John Ray Clemmons
2212 8th Avenue South
Nashville, TN 37204
(615) 823-1201 – Telephone
(615) 460-7484 – Facsimile
Email: johnray@clemlawfirm.com

Shea Sisk Wellford
6410 Poplar Ave., Ste. 1000
Memphis, TN 38119
(901) 522-9000 – Telephone
Email: sheawellford@martintate.com

Melissa Kimberly Hodges
6410 Poplar Ave., Ste. 300
Memphis, TN 38119
(901) 767-6160 – Telephone
(901) 767-7411 – Facsimile
Email: kim.hodges@ogletreedeakins.com

Sarah Smith
24 Greenway Plaza, Suite 1400
Houston, TX 77046
(713) 659-6767 – Telephone
Email: sarah.smith@lewisbrisbois.com

Seth Michael Friedman
600 Peachtree Street, NE, Suite 4700
Atlanta, GA 30308
(404) 991-2184 – Telephone
Email: seth.friedman@lewisbrisbois.com

Jack Paul Brewer
PO Box 198349
Nashville, TN 37219
(615) 499-7279 – Telephone
Email: paul.brewer@mgclaw.com

Clarence A. Wilbon
James Bennett Fox, Jr.
6075 Poplar Ave., Ste. 700
Memphis, TN 38119
(901) 524-5324 – Telephone
(901) 524-5414 – Facsimile
Email: clarence.wilbon@arlaw.com
       ben.fox@arlaw.com

Kathryn Kelly Fell
Scott Alexander Edelman
55 Hudson Yards
New York, NY 10001-2163
(212) 530-5000 – Telephone
Email: kfell@milbank.com
       sedelman@milbank.com

Jonathan P. Lakey
Nathan A. Bicks
Tannera Gibson
130 North Court Avenue
Memphis, TN 38103
(901) 524-5000 – Telephone
(901) 524-5024 – Facsimile
Email: jlakey@bpjlaw.com
       nbicks@bpjlaw.com
       tgibson@bpjlaw.com

Diane Doolittle
555 Twin Dolphin Dr., Ste. 5th Floor
Redwood Shores, CA 94065
(650) 801-5000 – Telephone
(650) 801-5100 – Facsimile
Email: dianedoolittle@quinnemanuel.com

Josef Teboho Ansorge
1300 Eye Street NW, Suite 900
Washington, DC 20005
(205) 538-8267 – Telephone
(205) 538-8100 – Facsimile
Email: josefansorge@quinnemanuel.com

Kathryn Bonacorsi
75 Sutton Street, Apt. 1

Brooklyn, NY 11222
(212) 849-7312 – Telephone
Email: kathrynbonacorsi@quinnemanuel.com

Manisha M. Sheth
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000 – Telephone
Email: manishasheth@quinnemanuel.com

Paul Coggins
Brenda P. Gaffney
Kathryn Wright
2200 Ross Ave., Ste. 2800
Dallas, TX 75201
(214) 740-8104 – Telephone
(214) 756-8104 – Facsimile
Email: pcoggins@lockelord.com
        bgafney@lockelord.com
        katie.wright@lockelord.com

Edward L. Stanton, III
6075 Poplar Ave., Suite 500
Memphis, TN 38119
(901) 680-7369 – Telephone
Email: Edward.stanton@butlersnow.com

On this the 31st day of March, 2023.


s/ Ronna D. Kinsella
RONNA D. KINSELLA, ESQUIRE