**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
IN THE WESTERN DIVISION**

| | | |
|---|---|---|
| Mary Doe as next friend of John Doe 1, John Doe 2, and John and Jane Does 1-100, | ) ) ) | Civil Action No.: 2:22-cv-02657 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation, USA Federation for Sport Cheering d/b/a USA Cheer, Charlesbank Capital Partners, LP, Bain Capital, LP, Jeff Webb, individually, Gym & Studio Ops, LLC d/b/a Premier Athletics, Susan Traylor, and Dominick Frizzell, | ) ) ) ) ) ) ) ) ) ) ) ) | **JURY DEMANDED** |
| Defendants. | ) ) | |

_____

**<u>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS GYM & STUDIO OPS, LLC d/b/a PREMIER ATHLETICS, LLC AND SUSAN TRAYLOR'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

Plaintiffs John Doe 1 and 2 are two minor All-star cheerleader-athletes who, during the operative timeframe, competed on behalf of the Varsity network of gyms, including Defendant Premier, which at all times relevant to the Complaint, was managed and operated by Defendant Traylor. Plaintiffs' First Amended Complaint (*Mary Doe as next friend of John Doe 1, John Doe 2, and John and Jane Does 1-100 v. Varsity Spirit, et al*, 2:22-cv-02657 [ECF No. 7] filed Oct. 6, 2022) ("Complaint") alleges they were subjected to serious and pervasive sexual and mental abuse while cheering at Defendant Premier, under the management of Defendant Traylor. During the entire timeframe of this abuse, Plaintiffs' abuser, Defendant Frizzell, was a credentialed coach, member of Defendant USASF and an employee of these Defendants.

**STANDARD**

Defendants bring their motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P. To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain[] a short and plain statement of the claim showing that the pleader is entitled to relief"). In seeking dismissal under Rule 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief[,]" *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007), and the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When deciding a motion to dismiss under Rule 9(b) for failure to plead fraud with particularity, "Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). Rather, courts should consider "that the purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Id*.

**ARGUMENT**

**A. The Court Should Deny Defendant's Request to Strike**

Defendants move, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure for an order striking several allegations in Plaintiffs' Complaint that Defendants erroneously categorize as "impertinent and immaterial." Motions to strike under Rule 12(f) are addressed within the sound discretion of the Court, although they are generally disfavored. (citing *Fed. Sav. & Loan Ins. Corp. v. Burdette*, 696 F.Supp. 1183, 1186 (E.D.Tenn.1988); *FDIC v. Butcher*, 660 F.Supp. 1274, 1277 (E.D.Tenn.1987); *FDIC v. Berry*, 659 F.Supp. 1475, 1479 (E.D.Tenn.1987)). Courts generally

disfavor motions to strike because they "propose [ ] a drastic remedy." *Wrench LLC v. Taco Bell Corp.*, 36 F.Supp.2d 787, 789 (W.D.Mich.1998) (quoting, *Resolution Trust Corp. v. Vanderweele*, 833 F.Supp. 1383, 1387 (N.D.Ind.1993) *See also Driving School Assoc. of Ohio v. Shipley*, 2006 W.L. 2667017, *1 (N.D.Ohio 2006) (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir.1953)), *Johnson v. Cnty. of Macomb*, No. 08-10108, 2008 WL 2064968, at *1 (E.D. Mich. May 13, 2008) ("A motion to strike is a drastic remedy that should be used sparingly and only when the purposes of justice require.") A motion to strike should be granted only where there is a clear showing that the challenged defense has no bearing on the subject matter and that permitting the matter to stand would prejudice the party. *Ameriwood Indus. Intern. Corp. v. Arthur Andersen & Co.*, 961 F.Supp. 1078, 1083 (W.D.Mich.1997) Such is not the case here. On the contrary, Plaintiffs' Complaint provides necessary historical background and context surrounding the formation of the Varsity network and the various entities that comprise that network. The Complaint details the manner in which those entities and individuals were designed by the creator of the industry and how they have worked together to advance the goals of the Enterprise. Contrary to Defendants' assertions, this background information, and the specific allegations regarding the pattern of abuse for profit in All-star cheer, are not only germane, but are necessary to formulate the stating of Plaintiffs' claims in accordance with Rules 8 and 9, Fed.R.Civ.P. Contrary to their claims, this information is not offered not to "harass, embarrass [or] intimidate" them, but rather to establish the backdrop against which the Plaintiffs' abuse took place and to illustrate the depth and breadth of the Varsity enterprise.

As to Plaintiffs' claim of joint and several liability, Defendants rely on *McIntyre v. Balentine*, 833 S.W. 2d 52 (Tenn. 1992) in arguing that this claim should be stricken from the Complaint under Rule 12(f). *McIntyre* only stated in dicta that joint liability would appear to be supplanted

by adoption of a comparative negligence system where fault is apportioned by percentage. Though Plaintiffs concede it could be the case that joint liability does not apply, they do not concede this feature of Tennessee tort law requires such an allegation to be stricken from the Complaint at this juncture. Plaintiffs, in good faith, believe a determination of the extent to which the civil conspiracy exception to the comparative negligence structure codified under Tenn. Code Ann. §29-11-107(b)(1) might apply would be required. And the only prejudice to Defendants that Plaintiffs could imagine would be in the situation of a court mistakenly instructing a jury to apply joint liability where it is otherwise not applicable.

## B. Plaintiffs Have Sufficiently Pled Their §2255 Claims

The Child Abuse Victim's Rights Act of 1986, as amended and codified at 18 U.S.C. § 2255, allows an individual to bring a civil claim if, as a minor, they were a victim of the violation of certain enumerated statutes, among them 18 U.S.C. § 2422. The text of § 2255 does not limit liability to the first party perpetrator. See *Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd*., 860 F.Supp.2 1337, 1340 (S.D.Fl. 2012) (finding that, had Congress intended to limit liability under § 2255 exclusively to the perpetrator or offender, it could have done so by including such qualifying language in the statute). As such, where the actionable criminal statute encompasses a perpetrator, liability under § 2255 should attach, and should further attach in accordance with the common law. *See T.M. Next Friend of H.C. v DeWine*, 49 F.4th 1082 (6th Cir. 2022) ("When 'the text is clear, that is the end of the matter'") (quoting *Keen v. Helson*, 930 F.3d 799, 805 (6th Cir. 2019)).

Pursuant to 18 U.S.C. § 2, "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." Courts have long found that § 2 deals with "two classes of activity which do not involve direct violations of the law, but which contribute to the commission of offenses and are punishable in the

same manner as direct violations." *U.S. v. Maselli*, 534 F.2d 1197 (6th Cir. 1976); *see U.S. v. Head*, 927 F.2d 1361, 1369 (6th Cir. 1991) ("Drawing an exact line of sufficient participation [to support conviction for aiding and abetting]...is difficult if not impossible"); *see also U.S. v. Winston*, 687 F.2d 832, 835 (6th Cir. 1982) (noting that one need not have a stake in the venture but must be more than a mere spectator to support a conviction for aiding and abetting).

Numerous Circuits and district courts have determined that a party may be criminally liable under for aiding and abetting those crimes listed in § 2255. *See U.S. v. Papakee*, 573 F.3d 569, 573-574 (8th Cir. 2009); *U.S. v. H.B.*, 695 F.3d 931, 935 (9th Cir. 2012) (citing *U.S v Garcia*, 400 F.3d 816, 820 (9th Cir. 2005) ("Aiding and abetting is not a separate and distinct offense from the underlying substantive crime, but is a different theory of liability for the same offense")); *see U.S. v. Joe*, 696 F.3d 1066 (10th Cir. 2012); *see U.S. v. Neha*, No. CR 04-1677-JB, 2006 WL 4062898 (D.N.M. Jun. 26, 2006); *see U.S. v. Sirois*, 87 F.3d 34, 38-39 (2nd Cir. 1996) (finding one could be found guilty of aiding and abetting a violation of § 2251(a)); *see also U.S. v. Daniels*, 653 F.3d 399, 415 n. 3 (6th Cir. 2011) (finding the defendant could alternatively be held liable for the crimes of child prostitution and creating child pornography under an aiding and abetting theory).

Under Tennessee statutory law, a party may also be found liable for criminal facilitation. *U.S. v. Gloss*, 661 F.3d 317 (6th Cir. 2011); *see U.S. v. Sawyers*, 409 F.3d 732, 738 (6th Cir. 2005) (abrogated on other grounds) ("A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility...the person knowingly furnishes substantial assistance in the commission of the felony") (quoting Tenn. Code. Ann. § 39-11-403(a)).

Plaintiffs specifically alleged that Defendant Premier and Defendant Traylor were certified by USASF, part of the Varsity network, employed and supervised Defendant Frizzell, and provided

him access to minor children such as Plaintiffs while holding themselves out as providing a safe activity for Plaintiffs and a safe place to practice it. Through Defendant Premier's position as a Varsity gym and via Defendants' USASF certification, Defendants Premier and Traylor, along with Defendant Frizzell, were provided access to minor athletes, including Plaintiffs John Doe 1 and John Doe 2. Plaintiffs allege that Defendants, including Defendant Premier and Defendant Traylor, had specific knowledge of Defendant Frizzell's offending conduct, including sharing and requesting sexually explicit visual depictions of minor children to be sent electronically. Plaintiffs have thus properly alleged that Defendants knew of the abuse being perpetrated upon them by Defendant Frizzell, facilitated by the Varsity network, and which occurred on premises under the reasonable auspices of Defendants' control. Taking the allegations in Plaintiffs' Complaint as true, Plaintiffs have sufficiently alleged that Defendants aided and abetted Defendant Frizzell's violations of 18 U.S.C. § 2255.

### C. Plaintiffs Have Sufficiently Pled Their RICO Claims

In order for a civil RICO claim to survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must allege: "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.E.2d 346 (1985). In addition, the plaintiff must plead proximate cause, such that they were injured in their business or property by reason of' the RICO violation. *Tucker v. Ky. Farm Bureau Mut. Ins. Co.*, 2022 WL 4487967, (E.D. Ky. 2022). "[I]n the RICO context, the focus is on the directness of the relationship between the conduct and the harm." *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 12, 130 S.Ct. 983, 175 L.E.2d 943 (2010).

### 1. Plaintiffs have alleged facts demonstrating RICO standing.

"Standing in a civil RICO case requires a plaintiff to show (1) a violation of [RICO], (2) an injury to his business or property, and (3) that his injury was proximately caused by the RICO violation." *Tucker*, 2022 WL 4487967 at 5 (citation and internal quotation marks omitted). The Sixth Circuit has explained the requirement that a plaintiff be "injured in his business or property" has origins in antitrust laws. *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 563–64 (6th Cir. 2013). In this context, the Supreme Court has indicated that "Congress must have intended to exclude some class of injuries by the phrase 'business or property.'" *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). However, the Supreme Court further explained that "it taxes the ordinary meaning of common terms to argue . . . that a consumer's monetary injury arising directly out of a retail purchase is not comprehended by the natural and usual meaning of the phrase 'business or property.'" *Id*. Thus, "monetary injury, standing alone, may be injury to one's 'property'" within the meaning of RICO. *Id*. at 340.

Defendants argue Plaintiffs have failed to allege (1) any injury to property; or (2) a direct causal link between those property damages and Defendants' conduct. On the contrary, Plaintiffs allege that Defendants Premier and Traylor required Plaintiffs to pay membership dues, competition fees and other fees to Defendants. Defendants represented that they provided a safe atmosphere for Plaintiffs and other minor athletes, but Plaintiffs allege that rather than keep them safe, Defendants sought to cover up allegations of abuse, hired coaches who engaged in abusive behavior, and placed priority on athletes' dues and profits over athletes' safety. As a direct and proximate result of Defendants' promises and inducements, Plaintiffs allege they were damaged in their property by remitting substantial payment to Defendants. Thus, Plaintiffs have plausibly alleged standing under RICO.

## 2. Plaintiffs have alleged facts plausibly establishing a RICO "association-in-fact" enterprise with a common purpose.

"From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Stated differently, "an association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Id*. at 948. Notably, "[s]uch a group need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc." *Id*. Similarly, "Members of the group need not have fixed roles; different members may perform different roles at different times." *Id*.

Here, Plaintiffs allege that the defendants are all separately incorporated entities or individuals which had their own employees and businesses, but nevertheless worked together to create the "Varsity network," an enterprise of affiliated gyms, coaches, vendors, and governing bodies that usurped the All-star cheer market while exposing Plaintiffs to financial and sexual abuse. In creating the "Varsity network," Plaintiffs allege the Defendants, including Defendants Premier and Traylor, simultaneously continued on with their separate businesses. "The basic idea is that while one basketball player does not constitute a team, an association of five players does, without each losing his identity as a distinct person." *In re Lupon Mktg. & Sales Practices Litig.*, 295 F.Supp.2d 148, 173 (D.Mass. 2003). Plaintiffs have met their burden of pleading an association-in-fact.

**3. Plaintiffs have plausibly alleged facts satisfying the "operation or management" test and demonstrating multiple predicate offenses committed by each Defendant.**

For purposes of RICO, "[a]n enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Reves v. Ernst & Young*, 507 U.S. 170, 184 (1993). Similarly, "[a]n enterprise also might be 'operated'

or 'managed' by others 'associated with' the enterprise who exert control over it as, for example, by bribery." *Id.* Moreover, "knowingly carrying out the orders of the enterprise satisfies the 'operation or management' test." *Ouwinga*, 694 F.3d at 793. Accordingly, the "operation or management" test can be satisfied by a defendant "making decisions on behalf of the enterprise or by knowingly carrying them out." *U.S. v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008). In *Ouwinga*, the Sixth Circuit reversed a district court ruling dismissing RICO claims against attorneys and sales agents, finding the plaintiffs' allegations were sufficient to satisfy the "operation or management" test. 694 F.3d at 787–93.

Here, Plaintiffs have clearly alleged that Defendants Premier and Traylor, along with the Varsity Defendants, all played an integral role in an Enterprise designed to monopolize the All-star cheer world for maximum profit by all of them by making repeated and continuous representations about specific safety mechanisms to combat athlete abuse, while knowing that the Varsity network provided no such measures. In the interim, Plaintiffs allege Defendants continued to collect fees from Plaintiffs for services Defendants did not provide. (*See* Complaint ¶ 214) Moreover, Plaintiffs have provided Defendants sufficient information about their roles in the scheme to defraud Plaintiffs. Under 18 U.S.C. § 1962(c), "[a] scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *Heinrich*, 668 F.3d at 404 (quoting *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir.2005)). In *Kerrigan v. ViSalus, Inc.*, the Eastern District of Michigan explained Rule 9(b)'s requirements regarding predicate acts and a scheme to defraud. 112 F. Supp. 3d 580 (E.D. Mich. 2015). The defendants argued that because plaintiffs alleged predicate acts of mail and wire fraud, the plaintiffs were required to identify specific misrepresentations, the time, place, and contents of the false misrepresentations,

and the identity of the person making the misrepresentations." *Id.* at 607. The Court disagreed, explaining, "[i]n cases in which the plaintiff claims that the mails or wires were simply used in furtherance of a master plan to defraud, the communications need not have contained false or misleading information themselves." *Id.* (quoting *Sumitomo*, 995 F.Supp. at 456). "In such cases, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b)." *Id.* (quoting *Sumitomo*, 995 F.Supp. at 456). The court concluded Rule 9(b) did not require the plaintiffs to identify specific misrepresentations, instead finding a plaintiff need only "provide a detailed description of the fraudulent scheme and a clear explanation of each [d]efendant's alleged role in it." *Id.* Here, Plaintiffs have alleged that Defendants' conduct violated statutes including, without limitation: 18 U.S.C. §§ 2255, 1962(c) and (d), 1341, 1343, 1589, 1591, and 2422. Plaintiffs have also alleged that the Varsity Defendants were at the helm of this scheme, which required and was predicated on the participation of Defendants Premier and Traylor. The Complaint adequately explains how gyms and their owners acted as a conduit by which minor athletes were accessed for the purpose of creating a steady revenue stream. Defendants marketed themselves as a USASF-certified gym and member and touted athlete safety, all while knowingly failing to provide a safe atmosphere free from abuse. Plaintiffs have therefore satisfied their burden of alleging at least two predicate acts of racketeering activity against Defendant Premier and Defendant Traylor.

### 4. Plaintiffs' Complaint has plausibly established a pattern of racketeering activity.

"To establish that an enterprise's affairs have been conducted "through" a pattern of racketeering activity, there must be a nexus between the enterprise and the racketeering activity." *United States v. Qaoud*, 777 F. 2d 1105, 1115 (6th Cir. 1985). Notably, "[a]lthough 'enterprise' and 'pattern of racketeering activity' are separate elements, they may be proved by the same

evidence." *Id*. "A pattern of racketeering activity requires, at a minimum, two acts of racketeering activity within ten years of each other." *Ouwinga*, 694 F.3d at 795. Additionally, a plaintiff must satisfy the "relationship plus continuity" test by showing "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id*. (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–39 (1989)). "The relationship prong is satisfied by showing the predicate acts have 'similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Id*. (quoting *H.J. Inc.*, 492 U.S. at 240). The second prong, "the threat of continuity[,] may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *H.J. Inc.*, 492 U.S. at 242–43. Plaintiffs have set forth conduct involving Defendants that occurred over an extended period of time. Defendants attempt to separate the allegations of sexual abuse by Defendant Frizzell from the allegations of wire fraud and mail fraud by arguing that the two are unrelated and form no pattern at all. On the contrary, Defendants' misrepresentations about safety, the USASF certification of their gym and of Defendant Frizzell, and the invoicing of athletes for the atmosphere of safety that membership both in that gym and in USASF was supposed to provide, were directly intertwined with the foreseeable sexual abuse Plaintiffs suffered. Moreover, Plaintiffs have alleged multiple facts demonstrating that Defendants' scheme to defraud was part of the enterprise's regular way of doing business. As such, Plaintiffs have plausibly demonstrated a pattern of racketeering activity.

**5. Plaintiffs have alleged facts plausibly demonstrating that Defendants Premier and Traylor owed a duty of care to ensure the safety of children in the Varsity network and facts sufficient to demonstrate their claims of negligent security.**

"Tennessee courts determine whether a defendant owes or assumes a duty of care to a particular plaintiff by considering public policy and whether the risk of harm is unreasonable." *Downs*, 263

S.W.3d at 820, citing *Burroughs v. Magee*, 118 S.W.3d 323, 329 (Tenn. 2003). As the Court noted in *Downs*, "[p]ublic policy considerations are relevant because the 'imposition of a legal duty reflects society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's act or conduct.'" *Downs, supra*, quoting *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993). In general, "[a] risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by [the] defendant's conduct outweigh the burden upon [the] defendant to engage in alternative conduct that would have prevented the harm.'" *Downs, supra*, quoting *McCall*, 913 S.W.2d at 513. The key focus for the court is on the foreseeability of harm. *Downs*, citing *West v. East Tennessee Pioneer Oil, Co.*, 172 S.W.3d at 552; *see Doe v. Linder Constr. Co. Inc.¸*845 S.W.2d 173, 178 (Tenn. 1992) ("Foreseeability is the test of negligence").

"Properly defined duty is the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *McCall v. Wilder*, 913 S.W.2d 150 (Tenn. 1995) citing *Pittman v. Upjohn, Co.*, 890 S.W.2d 425, 428 (Tenn. 1994). "The general duty of care does not include an affirmative duty to act for the protection of another, however, 'unless the defendant stands in some special relationship to either the person who is the source of the danger, or to the person who is foreseeably at risk from the danger.'" *Biscan v.* Brown, 160 S.W.3d 462 (Tenn. 2005) (quoting *Turner v.* Jordan, 957 S.W.2d 815 (Tenn. 2005) (internal citations omitted)). Tennessee also recognizes strong public policy favors a duty toward minors in circumstances where a duty might not otherwise exist toward adults. *Biscan*, 160 S.W.3d at 481-82; *see Townsley v. Yellow Cab Co.¸*145 Tenn. 91, 273 S.W.58 (1922) In order for a special relationship to exist, the defendant must have the means and ability to control either the injured third party or the assailant. *Biscan, supra*; *see Marr v. Montgomery Elevator Co.*,

922 S.W.2d 526, 529 (Tenn.Ct.App. 1995) ("The existence of a special relationship may impose a duty where one would not otherwise exist…These relationships typically involve the elements of dependence, knowledge, and control") (citing 57 A Am.Jur.2d § 91 (1989).

Tennessee Courts also recognize that one who otherwise does not have a general duty to use due and reasonable care may nevertheless assume such a duty. *Biscan*, 160 S.W.3d at 482-83; *see Stewart v. State*, 33 S.W.3d 785, 793 (Tenn, 2000) ("One who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully").

This case involves allegations of significant harm perpetrated upon children. Plaintiffs allege that Defendants, as part of the Varsity network, operated with specific knowledge that sexual and physical abuse was foreseeable in the sport, and with actual knowledge that abuse and/or misconduct had occurred. Plaintiffs allege that Defendants held themselves out as a safe gym environment and made representations to athletes and their parents that they would protect children in the Varsity network from harm, by, for example, being a USASF-member gym with USASF-member coaches. The Varsity Defendants created policies, procedures, and specific guidelines intended to protect athletes from sexual abuse. The policies were designed for and implemented by the individual gyms, owners and coaches, such as Defendants Premier and Traylor not only in order to induce participation in the All-star cheer industry but in order to induce payment by the Plaintiffs for USASF membership and fees and costs paid to Varsity, which in turn resulted in additional income to Defendants Premier and Traylor in the form of rebates. (Complaint at ¶97) Plaintiffs alleged that Defendants Premier and Traylor had control over Defendant Frizzell, that Defendant Premier was actually owned by Defendant Varsity, and that the Varsity Defendants promoted Defendant Frizzell as a "cheerlebrity." Plaintiffs further allege that while Defendants made representations about the safety of their program and facility, Defendants also had

knowledge of Defendant Frizzell's specific propensity for harm. Based upon the four-corners of the Complaint, Plaintiffs have demonstrated that Defendants owed Plaintiffs a duty of care.

### 6. Plaintiffs have sufficiently pled their claims of Respondeat Superior

The doctrine of respondeat superior permits a principal to be held liable for the negligent acts of its agents. *Johnson v. LeBonheur Children's Med. Ctr*., 74 S.W.3d 338, 346 (Tenn.2002); *Washington v. 822 Corp.,* 43 S.W.3d 491, 494 (Tenn.Ct.App.2000). To hold a principal liable for the acts of another, a plaintiff must prove (1) that the person causing the injury was the principal's agent and (2) that the person causing the injury was acting on the principal's business and acting within the scope of his or her employment when the injury occurred. *Russell v. City of Memphis*, 106 S.W.3d 655, 657 (Tenn.Ct.App.2002); *Tennessee Farmers Mut. Ins. Co. v. American Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn.Ct.App.1992).

The question of whether an employee was acting within the course and scope of his employment is "ordinarily one of fact for the determination of the jury, except where the departure from the [employer's] business is of marked and decided character." *Davis v. Modine Mfg. Co*., 979 S.W.2d at 608 (Tenn.Ct.App.1998); see also *Home Stores, Inc. v. Parker*, 179 Tenn. 372, 166 S.W.2d 619, 622 (1942). Defendants Premier and Traylor argue that Defendant Frizzell's conduct falls within the above exception because sexual abuse is a departure from Defendants' business. This position ignores the sophistication and complexity of Defendant Frizzell's abuse of Plaintiffs and the facilitation of Defendant Frizzell's actions by Defendants Premier and Traylor in order to meet their own business goals. As alleged in the Complaint, the Varsity Defendants and Defendant Premier promoted Defendant Frizzell on social media platforms and boosted his reputation in the cheer community in order to boost revenue and recruit new athletes, including Plaintiffs. (Complaint at ¶63, 242). Much of the abuse Plaintiffs suffered was initiated and accomplished via

14

online social media platforms (Complaint at ¶¶221, 222, 224-228, 265). Throughout the timeframe of Plaintiffs' abuse, Defendant Premier interacted with, shared, and otherwise boosted Defendant Frizzell's social media for its own benefit and profit and to continue to utilize Defendant Frizzell's social media presence and "cheerlebrity" status to recruit new athletes to its program. Defendant Premier continued its interactions with Defendant Frizzell's social media even after Plaintiffs' abuse was disclosed. Throughout the timeframe of the complaint, Defendant Premier encouraged Defendant Frizzell's use of social media, which ultimately benefited Defendant Premier.

Defendant Frizzell's abuse of Plaintiffs was so intertwined with his use of social media and Defendant Premier's facilitation and encouragement of that social media use that it cannot be conclusively stated that the abuse Plaintiffs suffered was a departure from Defendant Premier's business. On the contrary, the use of social media, and promotion of "cheerlebrity" coaches like Defendant Frizzell to recruit new paying athletes was central to Defendant Premier's business model. The question of whether Defendant Frizzell was acting within the course and scope of his employment is a question of fact to be determined by a jury. At this stage, Plaintiffs have set forth sufficient facts to support their claims.

### 7. Plaintiffs have sufficiently pled their claims of Negligent Supervision

"Tennessee law does not 'specifically define [ ] the elements of negligent supervision'; the tort must therefore be proven as any other, by demonstrating (1) injury, (2) duty, (3) breach, and (4) causation (actual and proximate)." *Darling v. J.B. Expedited Services, Inc.*, No. 2:05-cv-00017, 2006 WL 2238913 (M.D.Tenn. Aug. 3, 2006) citing *Holliday ex rel. Estate of Holliday v. Epperson*, No. 02-1030-T, 2003 WL 23407498 at *3 (W.D.Tenn. July 28, 2003). Tennessee courts do recognize the tort of negligent supervision outside of the strict employee-employer context. *See Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712 (Tenn.Ct.App. 1990)

("Tennessee courts recognize the negligence of an employer in the selection and retention of employees and *independent contractors*") (emphasis added); *see also Marshalls of Nashville, Tennessee, Inc. v. Harding Mall Associates, Ltd.*, 799 S.W.2d 239, 243 (Tenn.Ct.App. 1990) (finding that Tennessee has long recognized a party may be held liable for negligence in hiring or retaining an independent contractor where the party knows or reasonably could know the contractor is unfit to perform the work).

As set forth in the Complaint, the Varsity Defendants owned Premier Athletics, and were ultimately responsible for their daily conduct, including the daily decision making of Defendants Traylor and Frizzell – all of whom were authorized agents within the "Varsity Network." Here, where the Varsity Defendants had an ownership interest in the gym at issue, and where Plaintiffs allege Defendants had the power to hire, supervise and control Defendant Frizzell within the Varsity network, it is clear that Defendants had the requisite ability to control Defendant Frizzell. How this level of control was exercised is therefore a question of fact and Plaintiffs have adequately alleged a cause of action for negligent supervision.

**8. Plaintiffs have sufficiently pled their Unjust Enrichment claims**

Under Rule 8.05 of the Tennessee Rules of Civil Procedure, "[a] party may set forth two or more statements of a claim or defense alternatively or hypothetically…" Rule 8.05, T.R.C.P. A party may also pursue alternative remedies up until and even after trial. *Commercial Painting Co. Inc. v. Weitz Company, LLC*, No. W2019-02089-COA-R3-CV, 2022 WL 737468 (Tenn.Ct.App. Mar. 11, 2022); *see Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 906 (Tenn. 1999) (noting the "election of remedies" doctrine is the solution when two inconsistent remedies may exist to redress a single wrongful act) The existence of Plaintiffs' breach of contract claims is therefore not preclusive of a valid claim for unjust enrichment. To demonstrate unjust enrichment, a party must

prove "'[a] benefit conferred upon the defendant by the plaintiff'; (2) 'appreciation by the defendant of such benefit'; and (3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Freeman Industries, LLC v. Eastman Chemical, Co.* 172 S.W.3d 512 (Tenn. 2005), quoting *Paschall's Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 15, 153-54 (1966). Here, the circumstances making it inequitable to retain the financial benefit lies in the fraudulent assurances to Plaintiffs regarding a level of safety they thought they were paying for.

The Complaint alleges that Defendant Premier and Defendant Traylor, by and through their USASF membership and certification, held out coaches such as Defendant Frizzell as safe and not posing a significant risk of harm. Plaintiffs have alleged that Defendants intended for their athletes, and their parents, to rely upon the representations about safety and Plaintiffs did so rely. Beyond mere reliance, the Defendants used these representations about safety as a means by which to advance and grow their business and the Varsity network. At the motion to dismiss stage, it is sufficient for Plaintiffs to allege facts that could lead a reasonable juror to find that Plaintiffs may have a right to recover. The sheer volume of Defendant Premier's representations about athlete protection suffices to demonstrate that safety in the sport was a pre-eminent representation on which athletes (and their families) relied. As set forth in the Complaint, Defendants received significant and substantial financial benefits from Plaintiffs while undertaking a course of conduct that directly and proximately caused Plaintiffs significant physical and mental harm. Specifically, the Complaint alleges Defendant Premier and Defendant Traylor represented, vis-a-vis their USASF certification, that its program was safe for these athletes. Defendants required its members, including Plaintiffs, to be members of USASF. As a result, Plaintiffs paid fees in exchange for a safe atmosphere, free from abuse, including sexual abuse, all while Defendants knew or had reason

to know that its certified member, Defendant Frizzell had access to minor children in the Varsity network, including Plaintiffs, upon whom he was perpetrating horrific acts of sexual abuse. Defendants continued to benefit from Plaintiffs' membership and participation, despite the abuse. Under these facts and circumstances, it would be inequitable for Defendant to keep the valuable consideration Plaintiffs paid.

### 9. Plaintiffs have alleged facts plausibly stating claims for Intentional and/or Negligent Infliction of Emotional Distress

Tennessee recognizes the existence of negligent infliction of emotional distress. *Marla H. v. Knox County*, 361 S.W.3d 518 (Tenn.Ct.App. 2011); *see Camper v. Miner*, 915 S.W.2d 437, 444-46 (Tenn. 1996) (where the Tennessee Supreme Court recognized that claims based on emotional injury could serve the state's legitimate interests in promoting the underlying purpose of negligence law). "[N]egligent infliction of emotional distress cases should be analyzed no differently than any other negligence case and that the proper application of the familiar elements of negligence is the preferable way in which to sort out the genuine from the false, the serious from the trivial." *Marla H.*, 361 S.W.3d at 529, quoting *Camper*, 915 S.W.2d at 443. To establish a claim for negligent infliction of emotional distress, a plaintiff must therefore satisfy the requisite elements of ordinary negligence, and must also demonstrate a severe emotional injury. *Marla H., supra*; *see Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). An emotional injury is "severe" or "serious" where a reasonable person normally constituted would be unable to adequately cope with the mental stress engendered by the circumstances of the case. *Marla H., supra*, quoting *Rodriguez v. State*, 52 Haw. 156, 472 P.2d 509, 520 (1970). To establish an intentional infliction of emotional distress, a plaintiff must demonstrate (1) intentional or reckless conduct; (2) that is so outrageous as to be intolerable; and (3) the conduct resulted in serious mental

injury. *Miller v. Willbanks*, 8 S.W.3d 607 (Tenn. 1999) citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see* Restatement (Second) of Torts § 46.

In their Complaint, Plaintiffs allege that Defendants violated their responsibilities to Plaintiffs, which they knew or should have known would result in emotional distress. (Compliant at ¶383). Plaintiffs allege that during the operative timeframe, Defendants received numerous reports against Defendant Frizzell, but continued to support him, promote him and allow him access to minor athletes. Plaintiffs allege that Defendants failed to report Defendant Frizzell to law enforcement in a timely manner, and Plaintiff John Doe 1 alleges that Defendants purposefully ignored or avoided allegations of abuse against Defendant Frizzell until John Doe 1 independently reported to law enforcement. Significantly, Defendant Frizzell felt so emboldened by Defendants' lack of action, that he bragged about being able to keep his job with Defendant Premier and Defendant Traylor despite the complaints, taunted Plaintiff John Doe 1 and sent Plaintiff John Doe 1 threatening messages. (Complaint at ¶¶ 239-240). Such conduct is so outrageous as to go beyond all bounds of decency and is to be regarded as odious and utterly intolerable be unacceptable in a civilized community. Defendants' actions proximately caused serious, severe, and pervasive emotional and mental injury to Plaintiffs.

**10. Plaintiffs do not rely upon veil piercing in their arguments against Defendants**

Defendants contend that they cannot be held responsible because Plaintiffs have failed to set forth facts under which statements of governing bodies such as Defendants USASF and USA Cheer can be imputed to them. But Plaintiffs do not contend that Defendants operated as alter egos of Defendant Varsity, USASF or USA Cheer, or vice versa. The Tennessee Supreme Court has long recognized that a party may not escape liability from harm merely by virtue of retaining an independent contractor to do its work. *See McHarge v. M.M. Newcomer & Co.*, 117 Tenn. 595

(Tenn. 1907); *see Parker v. Holiday Hospitality Franchising, Inc.*, 446 S.W.3d 341, 349-50 (Tenn. 2014) (recognizing two exceptions to the general rule against imposing liability on one who engages a third party to perform certain work); *see also Federal Ins. Co. v. Winters*, 345 S.W.3d 287, 295 (Tenn. 2011) ("The delegation of performance, however, does not relieve the contractor from the duties implicit in the original contract"). As set forth in the Complaint, Defendant Premier employed Defendant Frizzell and Defendant Traylor managed and supervised Defendant Frizzell. Both Defendant Premier and Defendant Traylor represented that their gym was safe for child athletes and held out Defendant Frizzell as a certified member of USASF and safe to be around children, even when they had information he was not. As such, Plaintiffs' allegations support independent liability against Defendants for their role in providing the means by which Defendant Frizzell was granted direct access to minor athletes, and allowing him to perpetuate sexual abuse against these athletes.

## CONCLUSION

As set forth herein and above, Plaintiffs' Complaint has plausibly alleged causes of action against Defendants Premier and Traylor, satisfying Plaintiffs' pleading burden under Rules 8 and 9, Fed.R.Civ.P such that Defendants' motion to dismiss pursuant to Rule 12(b)(6) should be denied. Plaintiffs have further demonstrated no part of their Complaint need be stricken pursuant to Defendants' motion under Rule 12(f). While Plaintiffs believe they have satisfied the pleading standard, should the Court dismiss any cause of action, Plaintiffs respectfully ask that the dismissal be without prejudice so they may have a reasonable opportunity to amend.

Respectfully submitted,

/s/ J. Michael Clemons
J. Michael Clemons (TN BPR No. 024362)
John Ray Clemmons (TN BPR No. 025907)
CLEMMONS & CLEMMONS, PLLC
414 Union St., Suite 1900
Nashville, TN  37219
Telephone: (615) 823-1201
Facsimile: (615) 823-1194
Email:  johnray@clemlawfirm.com
           michael@clemlawfirm.com
*Co-counsel for Plaintiffs*

Bakari T. Sellers (SC Fed. ID No. 11099)*
Mario A. Pacella (SC Fed. ID No. 7538)*
Amy E. Willbanks (SC Fed. ID No. 13537)*
Jessica L. Fickling (SC Fed. ID No. 11403)*
Alexandra Benevento (SC Fed. ID No. 10734)*
STROM LAW FIRM, LLC
6923 N. Trenholm Road, Suite 200
Columbia, South Carolina 29206
Phone:  (803) 252-4800
Email: bsellers@stromlaw.com
           mpacella@stromlaw.com
           awillbanks@stromlaw.com
           jfickling@stromlaw.com
           abenevento@stromlaw.com

*Attorneys for Plaintiffs*
*Admitted Pro Hac Vice*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties, including Defendant Dominick Frizzell, will be served via regular U.S. Mail.  Parties may access this filing through the Court's electronic filing system.

This the 28th day of April, 2023.

<u>/s/ J. Michael Clemons</u>