# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

JOHN DOE 1,                                    Case No. 1:22-CV-02139

        Plaintiff,

        -vs-                                    JUDGE PAMELA A. BARKER

VARSITY BRANDS, LLC, et al.,                   MEMORANDUM OPINION AND
                                               ORDER
        Defendants.

        Plaintiff John Doe 1 filed a Complaint in this matter on November 28, 2022 against 11

defendants. (Doc. No. 1.) Before the Court are four motions to dismiss, filed by five of the defendants

in this case. The motions to dismiss presently before the Court are as follows: (1) Defendant Varsity

Spirit, LLC's ("Varsity Spirit") Motion (Doc No. 47); (2) Defendants Varsity Brands, LLC's

("Varsity Brands") and Varsity Brands Holding Company's ("Varsity Holding") Motion (Doc. No.

48)[1]; (3) Defendant USA Federation for Sport Cheering d/b/a USA Cheer's ("USA Cheer") Motion

(Doc. No. 51); and (4) Defendant U.S. All Star Federation's ("USASF") Motion (Doc. No. 58). Doe

filed Oppositions to all four Motions. (Doc. Nos. 72, 73, 74, 82.) The Varsity Defendants, USA

Cheer, and USASF filed Replies in Support of their Motions to Dismiss. (Doc. Nos. 84, 86, 87, 91.)

        For the following reasons, the Varsity Defendants', USA Cheer's, and USASF's Motions are

GRANTED IN PART and DENIED IN PART.

## I.    Factual Allegations

        Plaintiff Doe is a former competitive cheerleader. (Doc. No. 1, ¶ 1.) Doe alleges that when

he was 17 years old, he was sexually abused by two cheerleading choreographers, Defendants

---

[1] Collectively, the Court will refer to Varsity Spirit, Varsity Brands, and Varsity Holding as "the Varsity Defendants."

Brandon Hale and Taji Davis, who were allegedly affiliated with the Varsity Defendants.  (*Id.* at ¶ 4.)
In addition to pursuing claims against Hale and Davis, Doe also seeks to hold the Varsity Defendants,
Varsity Spirit founder Jeff Webb, Charlesbank Capital Partners, LP, Bain Capital, LP, USA Cheer,
and USASF liable for misrepresenting the safety of Varsity-affiliated gyms and competitions, and for
failing to adopt and/or enforce adequate policies to prevent and/or investigate sexual abuse of minor
athletes by adults affiliated with various cheerleading organizations.  (*Id.* at ¶ 3, 5-8.)

### A.    All-Star Cheerleading

This case involves myriad organizations and individuals associated with the sport of all-star
cheerleading.  (Doc. No. 1.)  Private all-star cheerleading is a highly competitive and fast-paced sport
that incorporates elements of cheer, dance, and tumbling.  (*Id.* at ¶¶ 34-35.)  All-star cheerleading
demands that its young athletes and their families invest significant amounts of time and money.  (*Id.*
at ¶ 38.)  Competitive cheerleading is not subject to traditional "seasonal" limitations but can take
place year-round.  (*Id.* at ¶ 36.)  Doe alleges that athletes can expect to spend between $3,000 to
$7,000 per season, and that some families may spend up to $20,000 per year for transportation,
lodging, membership and entrance fees, merchandise, uniforms, and accessories related to training
for, and competing in, multiple all-star competitions throughout the year.   (*Id.* at ¶¶ 36-38.)
According to Doe, the competitive cheer industry generates billions of dollars in annual revenue and
may serve up to four million athletes.  (*Id.* at ¶ 51.)

Doe alleges that Defendant Jeff Webb began his career in cheerleading in the early 1970s, and
began monetizing the operation of cheerleading camps throughout the 1970s and 1980s.  (*Id.* at ¶¶
40-43.)  In the 1980s, Webb founded an organization called the Universal Cheerleaders Association,
which eventually became Varsity Spirit.  (*Id.* at ¶ 42-43.)  Initially, Varsity Spirit began as a cheer

camp provider, but gradually expanded its operations to include hosting competitions, merchandising, branding, social media, and gym ownership and/or management.  (*Id.* at ¶¶ 44-45.)  By the early 2000s, Varsity Spirit's parent corporation, Varsity Brands, represented that it was the country's largest designer, marketer, and supplier of cheerleading and dance team uniforms and accessories, the largest operator of cheer and dance team training camps and clinics, a leading organizer of extracurricular activity special events, a major provider of studio dance conventions and competitions, and producer of studio dance apparel for studio dance competitions.  (*Id.* at ¶ 46.) However, even as early as 2002, Varsity Brands' largest source of revenue allegedly came from its connection with all-star cheer, through its subsidiary Varsity Spirit.  (*Id.* at ¶ 47.)

Doe alleges that from 2014 through 2018, Charlesbank, a private equity firm, wholly owned the Varsity Defendants.  (*Id.* at ¶ 125.)  Doe alleges that in 2018, Bain Capital, another PE firm, purchased the Varsity Defendants from Charlesbank for $2.8 billion, although Charlesbank retained a minority stake in the business. (*Id.* at ¶ 127.)

According to Doe, there are two non-profit organizations that oversee competitive cheerleading in the United States: USASF and USA Cheer.  (*Id.* at ¶¶ 23, 24.)  According to Doe, Webb and the Varsity Defendants were heavily involved in the creation of USASF and USA Cheer, and remain involved in the operation of both organizations.  (*Id.*)  For example, the Varsity Defendants allegedly created USASF through a $1.8 million interest-free loan, and the USASF's non-profit charter certificate lists the Varsity Defendants' address as USASF's address.  (*Id.* at ¶ 90.) Likewise, Doe alleges that in 2007, Webb and Varsity Spirit founded USA Cheer through another interest-free loan from the Varsity Defendants.  (*Id.* at ¶ 99-100.) Allegedly, USA Cheer shared an address with the Varsity Defendants.  (*Id.*)  Doe further alleges that the Varsity Defendants submitted

3

the original trademark application for the marks "U.S. All Star Federation" and "USASF."  (*Id.* at ¶ 103.)  Doe further alleges that for the first 15 years of USASF's existence, its offices were located at Varsity Spirit's corporate address, a Varsity representative answered USASF's phones, USASF employees were paid by Varsity, Varsity cashed checked issued to USASF, and Varsity Spirit was listed as the owner of USASF.  (*Id.* at ¶ 104.)  Doe alleges that the Varsity Defendants also exerted control over the USASF and USA Cheer by maintaining control over the organizations' respective boards of directors.  (*Id.* at ¶¶ 106, 109-110.)

Due to Webb's and the Varsity Defendants' alleged total control over USASF and USA Cheer, Webb and the Varsity Defendants are able to control all aspects of all-star cheerleading, including the following alleged examples:

- All athletes cheering on behalf of Varsity-affiliated gyms are required to purchase USASF memberships to compete at Varsity-sponsored events;

- All gyms, coaches, and vendors who wish to compete at and/or attend and/or offer products/services at Varsity events must also become members of USASF and pay monthly and/or annual fees to USASF, USA Cheer, and the Varsity Defendants;

- The Varsity Defendants require gyms to sign multi-year supply contracts whereby the gyms are paid cash rebates from Varsity Spirit for buying Varsity-branded merchandise, participating in Varsity-sponsored events, and working with Varsity-approved vendors;

- All athletes must pay annual fees to the Varsity Defendants for music, training, competition attendance, uniforms, and accessories;

- Athletes who compete at one Varsity-affiliated gym are prohibited from transferring to another Varsity-affiliated gym without permission;

- Athletes and their families attending Varsity events are required to stay at Varsity-approved hotels (a policy Varsity has dubbed "stay to play"), allegedly at inflated rates, and any failure to comply with the stay-to-play policy could subject the entire team to disqualification;

4

- Webb has publicly stated that teams performing at Varsity competitions in full Varsity uniforms and accessories received higher scores; and

- Following the highly publicized Jerry Harris sex abuse scandal in 2020[2], USASF and USA Cheer began offering risk and safety training to member gyms and personnel, but the Varsity Defendants required members to pay additional fees to access this USASF/USA Cheer safety training.

(*Id.* at ¶¶ 56, 59, 61, 62, 64, 68, 113, 174-75.)

### B. Doe's Allegations of Abuse

Doe alleges that, at the time of the alleged abuse, he was a citizen and resident of Lorain County, Ohio. (*Id.* at ¶ 14.) In 2014, when Doe was 15 years old, Defendants Brandon Hale, Taji Davis, and ShowPro Choreography, contracted with Doe's gym in "Avondale, Ohio"[3] to provide choreography services to the gym's all-star cheerleading team. (*Id.* at ¶ 188.) Doe alleges that during this initial meeting, Hale and Davis accompanied Doe, his gym owners, and other minor athletes on a day trip to Cedar Point amusement park. (*Id.* at ¶ 189.)

In April 2015, Doe transferred to a new cheerleading gym in Brecksville, Ohio. (*Id.* at ¶ 190.) Doe alleges that his new gym would also contract with Hale, Davis, and ShowPro for choreography services. (*Id.*)

Doe alleges that, "[b]eginning in 2016, Defendants Hale and Davis began to exchange messages with . . . Doe using an App." (*Id.* at ¶ 191.) Doe alleges that on or around July 28, 2016, when Doe was 17 years old, Hale and Davis returned to Ohio to provide "cheer training and choreography services to [Doe's] former gym." (*Id.* at ¶ 192.) Doe alleges that during this July 2016

---

[2] In 2020, Jerry Harris, a former Varsity-affiliated coach and star of the Netflix docuseries "Cheer," was accused of soliciting sex from two minor all-star cheerleaders. (*Id.* at ¶ 132.) In 2022, Harris pleaded guilty to and was sentenced on two counts related to soliciting sex from a minor. (*Id.*)

[3] The Court observes that there is no such town in Ohio as "Avondale." Doe does not otherwise identify the name of his former gym.

trip to Ohio, "Davis and Hale once again exchanged messages with" Doe. (*Id.* at ¶ 193.) Doe alleges that, at that time, Hale and Davis knew that Doe was under 18 years old and a USASF member athlete. (*Id.*)

Doe alleges that, despite their knowledge of Doe's age and status as a USASF member, Hale and Davis "pressed" Doe to visit them at their hotel room in Westlake, Ohio. (*Id.* at ¶ 194.) Doe alleges that he "was hesitant and initially refused" their invitation. (*Id.* at ¶ 195.) However, Doe ultimately went to Hale's and Davis's hotel room. (*Id.*) Upon arrival, Doe learned that Hale and Davis were also going to provide a cheerleading skills clinic for his current gym during their visit to Ohio. (*Id.*) Hale and Davis offered Doe liquor, which he refused. (*Id.* at ¶ 196.) Thereafter, Hale and Davis commenced to have sex with Doe. (*Id.*) Doe alleges that, according to his eventual police report, he told law enforcement that Hale and Davis had sex with Doe "multiple times despite the fact that [Doe] demonstrated his reluctance and attempted to leave." (*Id.* at ¶ 197.) At the time of the incident, Hale was 25 and Davis was 24. (*Id.* at ¶ 198.)

Doe alleges that after Hale's choreography contract with Doe's current gym ended, Doe was called into a meeting by his current gym's owner "to discuss potential inappropriate conduct between" Doe and Hale. (*Id.* at ¶ 199.) Doe alleges that he "was made aware of accusations that . . . Hale was giving [Doe] preferential treatment." (*Id.*) Other than the gym owner's meeting to question Doe about the anonymous complaint regarding Hale's "preferential treatment," Doe's gym made no other inquiries and took no other action, and Hale continued to work as a USASF choreographer. (*Id.*)

Four years later, around June 20, 2020, and knowing that Hale and Davis still regularly worked with minors in the competitive cheer community, Doe sent an anonymous e-mail to two all-star gyms, one in California and one in North Carolina, reporting Hale's and Davis's abuse. (*Id.* at ¶

6

200.)  Only the gym in California responded to Doe's anonymous e-mail.  (*Id.* at ¶ 202.)  The California gym alerted California law enforcement to Doe's report and requested that Doe provide more information.  (*Id.*)  On June 23, 2020, USASF case manager Ginger Wilczak contacted Doe's anonymous e-mail address, asking him to reveal his identity.  (*Id.* at ¶ 203.)  On June 25, 2020, Doe came forward to make a formal report to USASF.  (*Id.* at ¶ 204.)  Thereafter, Wiczak notified Doe that local Ohio law enforcement had been contacted and that she would meet with USASF's vice president of membership, Amy Clark, about Doe's allegations.  (*Id.* at ¶¶ 205-06.)

On June 28, 2020, Clark e-mailed local Ohio law enforcement and explained that Doe met Hale and Davis through the sport of all-star cheerleading.  (*Id.* at ¶ 208.)  Clark explained that the "older person" asked a 17-year-old minor to come to his hotel room at 1:30 a.m., and that this older person "held, what could be argued, as [*sic*] a position of power over him."  (*Id.*)  Clark expressed concern that though she understood Ohio's age of consent to be 16 years old, there was a seven-year age difference.  (*Id.*)  Then Clark wrote as follows:

> At minimum, we have an alleged perpetrator, who used his position of power and age differential to "encourage" a 17 year old to come to his hotel room. At worse [sic], we have an alleged perpetrator who has demonstrated his modus operandus [sic], and may have done the same thing to additional minor athletes in our sport.

> And, is there a legal, moral, or ethical duty to investigate this situation even if the victim does not want to press charges?...I just have concerns that if it is not pursued – someone may find all of us negligent in our duty to protect minor athletes.

(*Id.*)

On July 30, 2020, local law enforcement notified Doe that they would not pursue charges against Hale and Davis because Doe was over 16 years old at the time of the alleged assault.  (*Id.* at ¶ 210.)  Doe alleges that the detective handling the investigation nevertheless opined to Doe "what happened with Defendants Hale and Davis was inappropriate."  (*Id.*)

7

Doe continued to follow up on his report to USASF.  (*Id.* at ¶ 211.)  On September 18, 2020, USASF's SafeSport administrator confirmed that USASF had initiated a third-party investigation into Doe's allegations regarding Hale and Davis.  (*Id.*)  On September 23, 2020, Doe met with the third-party investigator via Zoom and provided the names of two former teammates to serve as character witnesses.  (*Id.* at ¶ 213.)  During the investigation, Hale and Davis were temporarily suspended from USASF eligibility, but on November 19, 2020, Hale and Davis were removed from the suspended list.  (*Id.* at ¶ 214.)  On November 20, 2020, Doe e-mailed Clark to discuss Hale's and Davis's reinstatement, but she notified Doe that he would be speaking with USASF's counsel instead.  (*Id.* at ¶¶ 215-16.)  According to Doe's transcript of his call with USASF's counsel, which he included in his Complaint, USASF's counsel informed him that USASF believed the evidence did not turn out in Doe's favor and that there was no proof the alleged "violation" had occurred.  (*Id.* at ¶ 218.)  Doe alleges that after his call with USASF's counsel, Hale and Davis were permitted to continue working with minor athletes at USASF member gyms.  (*Id.*)

## II.    Procedural History

Doe filed this case on November 28, 2022.  (Doc. No. 1.)  In his Complaint, Doe alleges eleven counts against the Varsity Defendants: Count 1, violation of the Child Abuse Victims' Rights Act of 1986, 18 U.S.C. § 2255; Count 2, civil conspiracy in violation of the RICO Act, 18 U.S.C. §§ 1962(c) and (d); Count 3, gross negligence; Count 4, negligent supervision; Count 6, breach of contract; Count 7, unjust enrichment; Count 8, fraud; Count 9, negligent security; Count 10, civil conspiracy; Count 12, intentional infliction of emotional distress; and Count 13, violation of Ohio's Consumer Sales Practices Act, Ohio Rev. C. § 1345.02(A).  (*Id.*)

Doe also alleges ten counts against USASF: Counts 1, 2, 3, 4, 6, 8, 10, and 12, as well as Count 11, respondeat superior.  (*Id.*)

Doe also alleges six counts against USA Cheer: Counts 1, 2, 3, 4, 10, and 12.  (*Id.*)

In his Complaint, Doe alleges two bases upon which this Court may exercise subject-matter jurisdiction here.  First, Doe alleges that the Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, because "[t]his action arises pursuant to, and involves questions requiring the interpretation of[,] the law of the United States . . . ."  (*Id.* at ¶ 12.)  Second, Doe alleges that "[s]upplemental jurisdiction over state law claims is conferred upon the Court by 28 U.S.C. § 1367(a)."  (*Id.* at ¶ 13.)  Notably, Doe's Complaint does *not* invoke diversity jurisdiction under 28 U.S.C. § 1332 as a basis for subject-matter jurisdiction in this case.[4]

The Varsity Defendants filed their respective Motions on February 23, 2023.[5]  (*See* Doc. Nos. 47, 48.)  USA Cheer filed its Motion on February 24, 2023.  (Doc. No. 51.)  USASF filed its Motion on March 1, 2023.  (Doc. No. 58.)  Doe filed his Oppositions to the Varsity Defendants' and USA Cheer's Motions on March 24, 2023.  (Doc. Nos. 72, 73, 74.)  Doe filed his Opposition to USASF's Motion on March 31, 2023.  (Doc. No. 82.)  USA Cheer filed a Reply in Support of its Motion on April 6, 2023.  (Doc. No. 84.)  The Varsity Defendants filed their respective Replies on April 7, 2023.

---

[4] Indeed, Doe does not allege the citizenship of the limited liability company defendants at all.  Although Doe alleges the states in which the defendant-LLCs are incorporated and the states in which they maintain their principal places of business (*see* Doc. No. 1, ¶¶ 19, 20, 22), the citizenship of an LLC is not determined by its states of organization and principal place of business.  *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).  Instead, an LLC has the citizenship of each of its members.  *Id.*  Doe alleges no facts regarding the citizenship of the LLC members.

[5] Varsity Spirit's Motion to Dismiss is found at Doc. No. 47.  Varsity Brands' and Varsity Holding's combined Motion to Dismiss is found at Doc. No. 48.  In their Motion, Varsity Brands and Varsity Holding adopt in full and incorporate by reference Varsity Spirit's arguments in support of dismissal of all of Doe's claim.  (Doc. No. 48, PageID# 335.)  Thus, discussion of the "Varsity Defendants' arguments" will generally reference Varsity Spirit's briefing, and Doe's Opposition thereto.  (*See* Doc. Nos. 47, 72.)  Moreover, the Court notes that, in addition to incorporating Varsity Spirit's arguments, Varsity Brands' and Varsity Holding's Motion contains nearly identical arguments as Varsity Spirit's Motion, including multiple passages that appear to be taken verbatim (or nearly verbatim) from Varsity Spirit's briefs.  (*See* Doc. No. 48.)

(Doc. Nos. 86, 87.)  USASF filed its Reply on April 14, 2023.  (Doc. No. 91.)  Thus, these Motions are now ripe for a decision.

## III.    Standard of Review

The Varsity Defendants, USA Cheer, and USASF move to dismiss Doe's claims against them for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (*See* Doc. Nos. 47, 51, 58.)  Under Rule 12(b)(6), the Court accepts Doe's factual allegations as true and construes the Complaint in the light most favorable to Doe.  *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. Nat. Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

10

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## IV.    Analysis

### A.    Count 1, 18 U.S.C. § 2255

In Count 1, Doe brings a claim under 18 U.S.C. § 2255 against all Defendants, including the Varsity Defendants, USA Cheer, and USASF.  18 U.S.C. § 2255 was enacted as part of the Child Abuse Victims' Rights Act of 1986 ("CAVRA") and "empowers victims of child sexual abuse to recover money for the harms caused by their abusers." *Prewett v. Weems*, 749 F.3d 454, 457 (6th Cir. 2014).

The statute reads, in relevant part, as follows:

(a) In general.—Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred. The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. § 2255(a).

11

Under § 2255, a plaintiff "must establish a liability predicate for the award and a damages predicate for the award." *Prewett*, 749 F.3d at 457. "As for liability, the victim must show that his abuser violated a qualifying criminal statute." *Id.* As discussed below, Doe alleges that he was a victim of abuse in contravention of § 2422, one of the qualifying criminal statutes enumerated in § 2255(a). *See infra*. Section 2422 provides, in relevant part, as follows:

> **(a)** Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

> **(b)** Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422.

No criminal conviction is necessary to recover damages under § 2255. *Prewett*, 749 F.3d at 458. Rather, a plaintiff need only show, by a preponderance of the evidence, that a defendant committed one of the enumerated offenses. *Id.*

Doe alleges that the specific abusive acts were performed by "Defendants Hale, Davis, and ShowPro against Plaintiff John Doe 1 and enabled by the ongoing certification and ratification of the Varsity Defendants, Defendant USASF, Defendant USA Cheer, Defendant Charlesbank, and Defendant Bain Capital." (Doc. No. 1, ¶ 253.) Doe alleges that Hale, Davis, and ShowPro qualify as covered individuals under the statute and that the facts of this case indicate that the abuse occurred at "events," as defined by the statute. (*Id.* at ¶ 256.) Doe further alleges that Hale, Davis, and ShowPro "were held out by the Varsity Defendants, Defendant USASF, Defendant USA Cheer,

Defendant Charlesbank, and Defendant Bain Capital as being members and part of a safe network of coaches, choreographers, vendors, and other affiliates." (*Id.* at ¶ 257.) Doe alleges that he "was a minor at the time he was sexually abused and assaulted in contravention of 18 U.S.C. § 2422, thus constituting violations of 18 U.S.C. § 2255," and that he has suffered personal injuries because of these violations of law. (*Id.* at ¶¶ 258-59.)

The Varsity Defendants, USA Cheer, and USASF argue that Doe's § 2255 claim should be dismissed because Doe does not allege that these defendants committed a predicate violation of § 2422 against Doe. (Doc. No. 47, PageID# 290-91; Doc. No. 51-1, PageID# 389; Doc. No. 58-1, PageID# 546.) The Varsity Defendants, USA Cheer, and USASF further argue that § 2255 does not provide for secondary or vicarious liability, and, at any rate, that Doe does not plausibly allege such liability. (Doc. No. 47, PageID# 291-92; Doc. No. 51-1, PageID# 389; Doc. No. 58-1, PageID# 546.) In his Oppositions, Doe argues that "numerous courts" have determined that a party may be criminally liable under § 2422 "for aiding and abetting." (Doc. No. 72, PageID# 632; Doc. No. 82, PageID# 951; Doc. No. 74, PageID# 717-18.) Doe argues that Defendants authorized Hale and Davis to access and interact with minors, and that they placed Hale and Davis in "positions of trust" within the Varsity network. (*Id.*)

For the following reasons, the Court concludes that Doe fails to state a claim under § 2255 against the Varsity Defendants, USA Cheer, and USASF. First, Doe's § 2255 claim fails because he has not pleaded any specific facts suggesting that the Varsity Defendants, USA Cheer, and/or USASF themselves committed any of the predicate offenses alleged in the Complaint. Indeed, in Doe's Complaint, he alleges that "the specific acts complained of [were] performed by Defendants Hale, Davis, and ShowPro against" him, and that the Varsity Defendants, USA Cheer, and USASF, among

13

others, "enabled" these acts through "ongoing certification and ratification . . . ."  (Doc. No. 1, ¶ 253.)

Thus, Doe plainly does not allege that the Varsity Defendants, USASF, and USA Cheer themselves

violated § 2422 (or any of the other enumerated statutes in § 2255).

Further, to the extent Doe attempts to hold the Varsity Defendants, USASF, and USA Cheer

secondarily liable under an aiding-and-abetting theory, this attempt fails because § 2255 does not

provide for secondary liability.  *See Jane Doe 1, et al. v. Varsity Brands, LLC, et al.*, No. 6:22-cv-

2957, 2023 WL 4088483, at *7 (D.S.C. June 20, 2023).  In interpreting a statute,

> the Court determines and gives effect to the intent of Congress as expressed in the
> statute it enacted. *See, e.g., Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 253 (6th Cir.
> 2020) (citations omitted). The Court begins "where all such inquires must begin: with
> the text of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235,
> 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citing *Landreth Timber Co. v. Landreth*,
> 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985)). **Where the statute's
> language is plain, the inquiry also ends with the text.** *Id.* Courts "endeavor to 'read
> statutes with an eye to their straightforward and commonsense meanings.'" *Black v.
> Pension Benefit Guar. Corp.*, 983 F.3d 858, 863 (6th Cir. 2020) (quoting *Bates v. Dura
> Auto. Sys., Inc.*, 625 F.3d 283, 285 (6th Cir. 2010)). In doing so, courts ascribe "terms
> the ordinary meaning that they carried when the statute was enacted." *Id.* (citation and
> quotation omitted).

*Skyworks, Ltd. v. Centers for Disease Control and Prevention*, 524 F. Supp. 3d 745, 756-57 (N.D.

Ohio 2021) (emphasis added).  Section 2255 does not mention, or provide for, secondary liability.

*See* 18 U.S.C. § 2255.  This absence alone indicates that Congress did not intend to permit secondary

liability under § 2255.  *See Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir.

2008) (en banc) ("[S]tatutory silence on the subject of secondary liability means there is none . . . .");

*see also Doe v. City of Gauley Bridge*, No. 2:21-cv-00491, 2022 WL 3587827, at *13 (S.D. W. Va.

Aug. 22, 2022).

Recently, in *Jane Doe 1, et al. v. Varsity Brands, LLC, et al.*, the District of South Carolina

likewise concluded that the plain language of § 2255 did not provide for secondary liability.  *Jane*

*Doe 1, et al. v. Varsity Brands, LLC, et al.*, No. 6:22-cv-2957, 2023 WL 4088483, at *7 (D.S.C. June 21, 2023).  In *Jane Doe 1*, as in this case, nine former all-star cheerleaders alleged that they were sexually abused by various adults affiliated with the Varsity Defendants, USA Cheer, and/or USASF. *Id.* at *1.  The plaintiffs in *Jane Doe 1* alleged that the perpetrators' acts of abuse were "enabled by the ongoing certification and ratification" of the Varsity Defendants, USA Cheer, and USASF and that the perpetrators were held out as "part of a network of safe and trustworthy cheer coaching gyms."  *Id.* at *6.  The *Jane Doe 1* court concluded that the plaintiffs failed to state a claim under § 2255 against the defendants because the statute was silent as to secondary liability.  *Id.* at *7.  The court further concluded that, to the extent a few courts have read secondary liability into § 2255, those courts "overlooked the Supreme Court's decision in *Central Bank, N.A. v. First Interstate Bank, N.A.*"  *Id.* at *8.

In *Central Bank*, the Supreme Court reasoned, in the context of interpreting the Securities and Exchange Act of 1934, that "Congress kn[ows] how to impose aiding and abetting liability when it cho[oses] to do so. If . . . Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text. But it did not."  *Central Bank*, 511 U.S. at 176-77.  The Supreme Court further explained that because "Congress has not enacted a general civil aiding and abetting statute, there is no general presumption that [a] plaintiff may also sue aiders and abettors when Congress creates a private cause of action," and thus, when a person sues to recover damages from a private defendant for the defendant's violation of a statute, "there is no general presumption that the plaintiff may also sue aiders and abettors."  *Id.* at 182.

The *Jane Doe 1* court observed that "*Central Bank*'s rationale is not limited to the context of federal securities laws, as 'nothing in its holding turns on particular features of those laws.'"  *Jane*

*Doe* 1, 2023 WL 4088483, at *8 (quoting *Boim*, 549 F.3d at 689; citing *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 277-78 (D.C. Cir. 2018) and *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1006 & n.1 (9th Cir. 2006)).  Indeed, district courts within this circuit have also applied *Central Bank*'s reasoning in multiple unpublished opinions that there is no presumption in favor of recognizing civil aiding and abetting liability in the absence of statutory authorization outside the context of securities cases.  *See, e.g.*, *HLV, LLC v. Cnty. of Van Buren*, No. 1:13-cv-1366, 2015 WL 13873105, at *7-8 (W.D. Mich. June 29, 2015); *HMV Props., LLC v. IDC Ohio Man., LLC*, No. 2:08-cv-895, 2011 WL 53166, at *14 (S.D. Ohio Jan. 6, 2011); *Wuliger v. Liberty Bank, N.A.*, No. 3:02-cv-1378, 2004 WL 3377416, at *10 (N.D. Ohio Mar. 4, 2004).  Thus, the Court declines to read secondary liability into § 2255.  *Jane Doe 1*, 2023 WL 4088483, at *8.

Doe's argument that "[n]umerous Circuits and district courts have determined that a party may be **criminally** liable under section 2422 for aiding and abetting" is unpersuasive.  (Doc. No. 72, PageID# 632, emphasis added; *see also* Doc. No. 74, PageID# 718; Doc. No. 82, PageID# 951.)  As the D.C. Circuit noted in *Owens v. BNP Paribas, S.A.*, the "presumption against the inclusion of aiding and abetting liability rests partially on the fact that 'Congress has not enacted a general **civil** aiding and abetting statute,' . . . akin to the general **criminal** aiding and abetting statute, *see* 18 U.S.C. § 2(a)."  *Owens*, 897 F.3d at 277 (quoting *Central Bank*, 511 U.S. at 182) (cleaned up) (emphasis added).  Here, Doe claims that the defendants are civilly, not criminally, liable under § 2255.

Likewise, Doe's citation to *Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.* for the proposition that § 2255 does not limit liability to the first party perpetrator is not persuasive.  (*See* Doc. No. 72, PageID# 631; Doc. No. 74, PageID# 717; Doc. No. 82, PageID# 950.)  In *Jane Doe No. 8*, the plaintiff brought two claims against a defendant cruise line after one of the cruise line's

16

employees sexually assaulted the plaintiff when she was a 17-year-old passenger on one of its ships. *Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1338 (S.D. Fla.).  The defendant cruise line argued that the plaintiff's § 2255 claims against the cruise line should be dismissed because § 2255 provided a cause of action only against the criminal offender, i.e., the cruise line's employee.  *Id.* at 1339.  In conducting its statutory analysis of § 2255, the court noted that particularly relevant to its analysis of § 2255 was the "well-established canon of construction that '[s]tatutes which invade the common law or the general maritime law are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evidence.'"  *Id.* at 1339 (quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952)).  The court noted that "[s]quarely applicable to this case is the principle of federal maritime law that a cruise line is strictly liable for a crew member's assault of a passenger," a principle clearly established by two Supreme Court decisions from the late 19th century that remained binding precedent.  *Id.*  The *Jane Doe 8* court reasoned that it "must presume Congress intended to incorporate this long-standing principle of federal maritime law when enacting § 2255." *Id.* at 1340.  However, the instant case does not involve maritime law.  Thus, the *Jane Doe 8* court's approach to statutory interpretation of § 2255 is inapposite.

Accordingly, the Court concludes that Doe fails to state a § 2255 claim against the Varsity Defendants, USA Cheer, or USASF.  Count 1 is dismissed.

## B.    Count 2, Violations of the RICO Act, Pursuant to 18 U.S.C. §§ 1962(c) and (d)

In Count 2, Doe alleges that all Defendants, including the Varsity Defendants, USA Cheer, and USASF, committed civil conspiracy in violation of the RICO Act, pursuant to 18 U.S.C. §§ 1962(c) and (d).  (Doc. No. 1, ¶¶ 261-84.)  18 U.S.C. § 1964(c) provides a civil cause of action for

17

any "person injured in his business or property by reason of a violation of section 1962 of this chapter . . . ."  Doe alleges that all Defendants violated § 1962(c) and (d).  (*Id.*)  Section 1962(c) provides that "[i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. § 1962(c).  Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).

A substantive RICO claim brought under § 1962(c) has four elements: "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Courser v. Allard*, 969 F.3d 604, 621 (6th Cir. 2020) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)).  A RICO plaintiff must also establish that he suffered an injury to "business or property" because of the defendant's unlawful conduct.  *Jackson v. Sedgwick Claims Man. Servs., Inc.*, 731 F.3d 556, 563-64 (6th Cir. 2013).  Section 1962(d) makes it "unlawful for any person to conspire to violate any of" § 1962's provisions, including § 1962(c).

The Varsity Defendants, USA Cheer, and USASF challenge essentially all aspects of Doe's § 1962(c) and (d) RICO claims.  For the following reasons, the Court concludes that Doe fails to plausibly allege claims under either § 1962(c) or (d).

### 1. Doe Fails to Allege RICO standing

RICO's standing requirement has two elements: (1) injury to business or property; and (2) causation.  *Jackson*, 731 F.3d at 563-64; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  *See also Saro v. Brown*, 11 Fed. App'x 387, 389 (6th Cir. 2001).  An "injury to business or property" under RICO excludes "personal injuries" and also those injuries flowing therefrom.  *See Jackson*,

18

731 F.3d at 563-64.  Moreover, "[t]he injury to business or property must be concrete," rather than speculative or intangible.  *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 699 (E.D. Mich. 2020) (citing *Saro*, 11 F. App'x at 389) (internal quotations omitted).  Doe claims that he suffered two injuries sufficient to convey RICO standing.  First, he claims that he was injured because he "had a property interest in his membership dues . . . and other fees and costs . . . ."  (Doc. No. 1, ¶ 281.)  Second, he claims that he had a property interest in the "continued ability to cheer competitively."  (*Id.*)

### a)       Loss of Ability to Cheer Competitively

The Court begins with Doe's second alleged injury, that Doe had a property interest in the "continued ability to cheer competitively," which would have allowed Doe to gain "social media notoriety, 'Cheerlebrity' status, scholarship opportunities," and even possibly to become a cheer coach, gym owner, and/or event promoter himself.  (Doc. No. 1, ¶ 281.)  The Court rejects this argument.  First, this is too speculative of an injury to support RICO standing.  *See Raymo*, 475 F. Supp. 3d at 699.  In *Doe 1*, the District of South Carolina considered, and rejected, the identical argument that the plaintiffs' loss of their continued ability to cheer competitively was a sufficient injury to confer RICO standing.  *Doe 1*, 2023 WL 4088483, at *9.  The *Doe 1* court reasoned that the "[p]laintiffs had, at best, mere expectancy interests in realizing future financial and business opportunities in which [they] and their famil[ies] invested."  *Id.* (internal quotations omitted) (citing *Bowen v. Adidas Am., Inc.*, 541 F. Supp. 3d 670, 679-80 (D.S.C. 2021) (holding college basketball player did not have a recoverable expectancy interest in potential lost earnings he hoped to obtain as a potential first-round NBA draft pick)).  Likewise, here, a hoped-for career in all-star cheerleading is too speculative to comprise a protected property right under RICO.

Second, even if the loss of a potential career in all-star cheerleading was a concrete injury, such an injury could not confer RICO standing as Doe's loss of his alleged potential continued ability to cheer is derivative of his personal injury. In other words, Doe's loss of his continued ability to cheer stems directly from any personal injuries Doe suffered as the result of Hale's and Davis's alleged sexual abuse. *Jackson*, 731 F.3d at 565-66; *see also Gucwa v. Lawley*, 731 F. App'x 408, 412 (6th Cir. 2018) ("Even though personal injuries may lead to monetary damages, such personal injuries and their associated pecuniary losses—including medical expenses—do not confer relief under § 1964(c).").  Thus, the Court concludes that Doe fails to sufficiently allege RICO standing based on his alleged loss of his ability to compete in competitive cheerleading.

### b)    Membership Dues and Fees

Doe also contends that he had a property interest in his membership dues and fees remitted to the Defendants. (Doc. No. 1, ¶ 281.) "Money, of course, is a form of property." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979).

The Varsity Defendants and USA Cheer[6] argue that Doe's alleged monetary losses are not redressable under RICO because they derive from his personal injury claim, i.e., the alleged sexual abuse perpetrated by Davis and Hale. (Doc. No. 47, PageID# 294; Doc. No. 51-1, PageID# 392) However, this argument is unavailing because Doe paid his dues and fees to Defendants *before* Davis and Hale allegedly assaulted him. *Doe 1*, 2023 WL 4088483, at *9. Logically, then, the dues and

---

[6] USASF asserts two bases for dismissing Doe's RICO claim: (1) that Doe fails to adequately plead a predicate fraud claim with the requisite particularity required under Rule 9; and (2) no racketeering conduct is adequately alleged against USASF. (Doc. No. 58-1, PageID# 547.) USASF further contends that Count II fails for all the reasons set forth in USA Cheer's and the Varsity Defendants' memoranda. (*Id.* at PageID# 548.)  Thus, USASF has adopted the Varsity Defendants' and USA Cheer's arguments in full.

fees Doe paid to the Varsity Defendants, USASF, and/or USA Cheer could not have derived from his non-compensable personal injuries, so as not to be compensable under RICO.  *Id.*

However, the Varsity Defendants and USA Cheer also argue that Doe fails to plead the requisite proximate cause between the Defendants' alleged conduct and Doe's injury to support any RICO claims.  (Doc. No. 47, PageID# 295; Doc. No. 51-1, PageID# 392-93.)  "[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'"  *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led ***directly*** to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added).

Here, Doe fails to plausibly allege that the Varsity Defendants', USASF's, and/or USA Cheer's purported misrepresentations about athlete safety led **directly** to Doe paying his membership dues, fees, and other incidental costs to them.  Doe's only allegation as to proximate cause in the RICO context is that "[t]he actions of the Enterprise and its conspirators were the direct and proximate cause of these injuries to the Plaintiff."  (Doc. No. 1, ¶ 282.)  This is no more than a threadbare recital of one of the elements of a civil RICO claim.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Doe's allegations elsewhere in his Complaint belie his claim that he paid his dues and fees because of Defendants' representations about safety.  Rather, Doe alleges that he paid his membership dues, fees, and other incidental expenses to Defendants because he was required to do so to participate in Varsity-sponsored competitions and events.  (Doc. No. 1, ¶ 25.)   For example, Doe alleges that

21

" . . .  Defendant Webb mandated that All-star athletes cheering on behalf of Varsity-affiliated gyms purchase a USASF membership **as a requirement to compete at Varsity-sponsored events**." (*Id.* at ¶ 56, emphasis added.)  Doe also alleges that "[a]ll-star athletes competing on behalf of Varsity-member gyms pay monthly or annual fees to the gym as well as annual fees to the Varsity Defendants **for music, training, competition attendance, accessories, and other related fees**." (*Id.* at ¶ 61, emphasis added.)  Thus, based on the face of his Complaint, Doe paid membership fees, dues, and other incidental costs to Defendants because he wished to participate in competitive all-star cheerleading, not because of Defendants' alleged misrepresentations about safety.  Accordingly, having failed to allege that he was injured because of the Varsity Defendants', USA Cheer's, and/or USASF's purported predicate acts, Doe fails to state a civil RICO claim based on membership dues, fees, and/or other incidental costs.  *See also, e.g., Gilbert v. U.S. Olympic Comm.*, No. 18-cv-00981-CMA-MEH, 2019 WL 1058194, at *25, *report and recommendation adopted in relevant part by* 423 F. Supp. 3d 1112 (D. Colo. 2019) (rejecting former national taekwondo athletes' argument that they had civil RICO standing based, in part, on the $50 annual membership fee they paid to USA Taekwondo because the athletes paid their fees to engage in USAT events, not because of the defendants' predicate acts).

### 2.    Doe Fails to Allege a RICO "Association-in-Fact" Enterprise

Even if Doe could establish RICO standing, his § 1962(c) claim would nevertheless fail because he does not sufficiently allege the existence of a RICO "association-in-fact" enterprise.

A RICO association-in-fact enterprise "includes any . . . group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  In *Boyle v. U.S.*, the Supreme Court described the characteristics of such an enterprise:

> Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence.

*Boyle v. U.S.*, 556 U.S. 938, 948 (2009). Thus, an association-in-fact enterprise "has at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946.

Here, Doe alleges that all Defendants formed an association-in-fact enterprise. (Doc. No. 1, ¶ 267.) Doe alleges that each defendant "operated as a single unified entity with the common goal of taking billions of dollars from minor athletes who wanted to be a part of the competitive cheer world Defendants oversee, as well as to perpetuate a pipeline of new child-athletes, coaches and gyms." (*Id.* at ¶ 239.) Doe alleges that each defendant participated in the operation and management of the enterprise. (*Id.* at ¶ 241.) Doe further alleges that the enterprise "consists of a group of persons associated together for the common purpose of recklessly, intentionally, and willfully endangering the Plaintiff as a minor athlete by exposing him to illegal sexual abuse and exploitation of children while continuously and repeatedly taking money from Plaintiff, and also assuring his parents and/or guardians he was particularly safe in order to take this money." (*Id.* at ¶ 270.) The Varsity Defendants and USA Cheer argue that Doe fails to allege a common purpose among the alleged enterprise participants. (Doc. No. 47, PageID# 297; Doc. No. 51-1, PageID# 398.)

The Court concludes that Doe fails to plead any non-conclusory allegations that Defendants shared the common purpose of exposing Doe to sexual abuse while repeatedly taking his money.

*Boyle*, 556 U.S. at 946.  While Doe's Complaint contains myriad allegations about the Varsity Defendants', USA Cheer's, and USASF's business goals and purposes (such as growing the sport of competitive all-star cheerleading, increasing all-star cheer's presence on social media, and earning profits from uniform sales and event fees), Doe's Complaint contains no factual allegations that the Varsity Defendants, USA Cheer, and USASF aimed to expose Doe to sexual abuse, or that the Varsity Defendants, USA Cheer, and USASF shared a purpose with the alleged perpetrators of exposing Doe to such abuse.  (*See* Doc. No. 1.)  Doe's allegations regarding the specific acts of abuse relate only to actions allegedly taken by Hale and Davis.  (*Id.* at ¶¶ 187-219.)  Doe's allegations that the Varsity Defendants, USA Cheer, and USASF shared in a "common purpose" to sexually abuse Doe are conclusory and do not rise above the level of mere speculation.  *Bassett*, 528 F.3d at 430 (citing *Twombly*, 550 U.S. at 555-56).

Moreover, Doe fails to address the Varsity Defendants' and USA Cheer's arguments that Doe fails to plausibly allege a common purpose to establish the existence of a RICO "association-in-fact" enterprise.  Though Doe's Oppositions include sections titled "Plaintiff has alleged facts plausibly establishing a RICO 'association-in-fact' enterprise with a common purpose" and "Plaintiff has alleged facts plausibly establishing Defendant's participation in an 'association-in-fact' enterprise with a common purpose," Doe does not address the Varsity Defendants' and USA Cheer's arguments that he failed to plausibly allege a common purpose among *all* members of the enterprise.  (*See* Doc. No. 72, PageID# 635; Doc. No. 74, PageID# 721-22.)  Nor does Doe attempt to direct the Court's attention to any paragraph(s) within the Complaint that set forth sufficient allegations regarding the enterprise's common purpose.  Accordingly, the Court concludes that Doe fails to allege the existence of a RICO "association-in-fact" enterprise.  Doe's § 1962(c) claim fails.

24

### 3.    Doe Fails to Allege RICO Conspiracy Claim

Because Doe's § 1962(c) RICO claim fails for the reasons set forth above, Doe's RICO § 1962(d) claim likewise fails.  Without a viable § 1962(c) claim, Doe's conspiracy claim under § 1962(d) necessarily fails.  *See* 18 U.S.C. § 1962(d); *see also, e.g., Aces High Coal Sales, Inc. v. Cmnty Bank & Tr. W. Ga.*, 768 Fed. App'x 446, 450 (6th Cir. 2019) ("Because plaintiffs failed to plausibly allege a violation of § 1962(b) or (c), the district court properly dismissed the RICO conspiracy claim as well."); *see Marinac v. Todd*, No. 1:20-cv-1571, 2022 WL 3904049, at *14 (N.D. Ohio Aug. 30, 2022) ("[B]ecause plaintiffs have failed to successfully allege all the elements of a substantive RICO violation, plaintiffs have necessarily failed to plausibly allege a RICO-conspiracy claim.").  Accordingly, Doe's RICO claim is dismissed in its entirety.

### C.    Remaining State Law Claims

Having dismissed Doe's two federal claims against the Varsity Defendants, USASF, and USA Cheer, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

Pursuant to 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over state law claims once they have dismissed all claims over which they had original jurisdiction.  "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'"  *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  "[A] district court has broad discretion to decide whether to exercise jurisdiction over state law claims."  *Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 424 (6th Cir. 2015).  However, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding

them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996); *accord Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.").

Here, the Court uses its "broad discretion" in deciding not to exercise supplemental jurisdiction over Doe's remaining state law claims. *Smith*, 603 F. App'x at 424. The Court concludes that issues of comity support the Court's decision to decline jurisdiction over Doe's state law claims. As other courts have recognized, "[t]he interest in avoiding needless decisions on state-law issues as a matter of comity weighs heavily against supplemental jurisdiction." *Howell v. Buckeye Ranch, Inc.*, No. 2:11-cv-1014, 2013 WL 1282518, at *8 (S.D. Ohio Mar. 27, 2013); *see also Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 522 (6th Cir. 2007) (noting "the Supreme Court's general comity-related principle that residual supplemental jurisdiction be exercised with hesitation, to avoid needless decisions of state law"); *White v. City of Cleveland, et al.*, No. 1:17-cv-1165, 2020 WL 7640932, at *24 (N.D. Ohio Dec. 23, 2020); *Barrio Bros., LLC v. Revolucion, LLC*, No. 1:18-cv-2052, 2021 WL 2895509, at *18 (N.D. Ohio July 9, 2021). Were the Court to retain jurisdiction here, it would be required to delve into numerous purely state law claims, as well as Defendants' likely affirmative defenses to include Ohio's statute of limitations, as the Court's rulings on Doe's federal law claims do not fully resolve Doe's remaining state law claims. Such purely state-law decisions are better reserved for a state court.

Additionally, considerations regarding judicial economy, convenience and fairness do not outweigh the Court's comity concerns. It is not apparent that it would be *more* convenient or fair to litigate in an Ohio federal, rather than state, court. Doe does not allege that any of the parties are

26

citizens of, or maintain their principal places of business in, Ohio.  (Doc. No. 1, ¶¶ 14-24.)  Litigating in state court will be at least as convenient for the parties and witnesses as litigating in this Court, as both courts are located only a few blocks apart in Cleveland, Ohio.  *See Fox v. Brown Memorial Home, Inc.*, 761 F. Supp. 2d 718, 725 (S.D. Ohio 2011).  Moreover, this case has not yet progressed past the pleading stage.  No discovery has commenced, no trial date is set, and the matter has only been pending in federal court for a matter of months.  *Cf. Barrio Bros.*, 2021 WL 2895509, at *18.

Accordingly, the Court declines to exercise supplemental jurisdiction over Doe's state law claims.  Defendants' Motions to Dismiss Doe's state law claims are denied without any prejudice to any right Defendants may have to refile such motions in any state court proceedings.

**V.      Conclusion**

For the reasons set forth above, Varsity Spirit's, Varsity Brand's and Varsity Holding's, USA Cheer's, and USASF's Motions to Dismiss (Doc. Nos. 47, 48, 51, and 58) are GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED.**

 *s/Pamela A. Barker*
PAMELA A. BARKER
Date:  August 2, 2023                              U. S. DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOHN DOE 1,**                                          **Case No. 1:22-CV-02139**

        **Plaintiff,**

        **-vs-**                                          **JUDGE PAMELA A. BARKER**

**VARSITY BRANDS, LLC, et al.,**                  **JUDGMENT ENTRY**

        **Defendants.**

For the reasons stated in the Memorandum Opinions filed contemporaneously herewith, Defendants Varsity Spirit, LLC's, Varsity Brands, LLC's and Varsity Brands Holding Company's, USA Federation for Sport Cheering's, U.S. All Star Federation's, and Taji Davis's Motions to Dismiss (Doc. Nos. 47, 48, 51, 58, and 98) are GRANTED as to Counts 1 and 2 and DENIED as to Doe's remaining state-law claims. The Court declines to exercise supplemental jurisdiction over Doe's remaining state-law claims asserted against Varsity Spirit, Varsity Brands, Varsity Holding, USA Cheer, USASF, and Taji Davis, and those state-law claims are DISMISSED.

Additionally, for the reasons set forth in the Memorandum Opinion filed contemporaneously herewith, the Court sets aside the entry of default (Doc. No. 97) as to Defendants Brandon Hale and ShowPro Choreography. For the reasons set forth in the Memorandum Opinion filed contemporaneously herewith, the Court DISMISSES Counts 1 and 2 against Hale and ShowPro Choreography. The Court further declines to exercise supplemental jurisdiction over Doe's remaining state-law claims against Brandon Hale and ShowPro Choreography, and those state-law claims are DISMISSED.

Additionally, for the reasons set forth in the Memorandum Opinion filed contemporaneously herewith, Defendants Charlesbank Capital Partners, LP's, Bain Capital LP's, and Jeff Webb's Motions to Dismiss (Doc. Nos. 53, 54, and 56) are GRANTED.

The case is hereby TERMINATED.

**IT IS SO ORDERED.**


　_s/Pamela A. Barker_

PAMELA A. BARKER

Date:  August 2, 2023　　　　　　　U.S. DISTRICT JUDGE

2